WORTHY. L. CHURCHILL AND HORACE D. CHURCHILL v.
FRANK EMERICK, ALPENA CIRCUIT JUDGE.

*Jury—Communication with outsiders—Setting aside verdict—Mandamus for new trial—Return to order.*

1. Mandamus lies to compel a circuit judge to set aside a verdict and grant a new trial for communicating and drinking with others after being sent out to consider their verdict.

2. Ex parte affidavits returned by a circuit judge in response to an order to show cause why he should not grant a motion, will not be received if they were not used on the motion.

3. A bill of exceptions in a civil case can include no ruling made after verdict. Taking out a writ of error and filing a stay-bond can not therefore be treated as a voluntary waiver of the right to relief for matters subsequent to the verdict.

4. The opinions and discussions of individual jurors cannot be inquired into.

5. A trial judge is incompetent to decide that a verdict was not affected by outside influences to which the jury had been exposed; and if he refuses to set it aside on the ground that it was just, he usurps the functions of the jury. The presumption that the jurors were honest will not save the verdict.

6. A verdict is incurably vitiated if evidence of the public sentiment as to the case is allowed to reach the jury.

7. An order to show cause does not necessarily imply personal censure of the respondent: the review of judicial action is confined to legal errors, and the action itself is presumably conscientious.

Mandamus. Submitted April 21. Granted April 29.

*Levi T. Griffin* for relator. The discretion to refuse a new trial is not reviewable on error: *Dibble v. Rogers* 2 Mich. 405 ; *Bourke v. Kneeland* 4 Mich. 336 ; *Crippen v.*

*People* 8 Mich. 117 ; *Hill v. People* 16 Mich. 351 ; *Johr v. People* 26 Mich. 427 ; *Jones v. Hobson* 37 Mich. 36 ; *Mahoney v. People* 43 Mich. 39 ; *Toulman v. Swain* 47 Mich. 82 ; nor by mandamus : *People v. Judge &c.* 17 Mich. 67 ; *People v. Judge &c.* 20 Mich. 220; *Stork v. Judge &c.* 41 Mich. 5 ; unless the court abuses its discretion : *Scripps v. Reilly* 35 Mich. 386 ; *Burdick v. Haggart* (Dak.) 22 N. W. Rep. 589 ; *First Nat. Bank v. Wabash &c.* 61 Ia. 700 ; *Eldridge v. Minneapolis* 32 Minn. 253 ; *Peterson v. Faust* 30 Minn. 22 ; *Wheeler v. Wallace* 53 Mich. 355 ; *Bulen v. Granger* 56 Mich. 207 ; *Anderson v. Cahill* 65 Ia. 252 ; *Ensign v. Harney* 15 Neb. 330 ; a verdict may be set aside for misconduct of the jury in respect to using intoxicating liquors : *Ryan v. Harrow* 27 Ia. 494 ; *State v. Baldy* 17 Ia. 39 ; *People v. Douglass* 4 Cow. 26 ; *State v. Bullard* 16 N. H. 139 ; *Brant v. Fowler* 7 Cow. 562 ; *Hare v. State* 5 Miss. 187 ; contra, see cases cited by counsel for plaintiff below : *Smith v. Thompson* 1 Cow. 221 ; *Wilson v. Abrahams* 1 Hill 207 ; *Harrison v. Price* 22 Ind. 165 ; *Whelchell v. State* 23 Ind. 89 ; *Pratt v. State* 56 Ind. 179 ; *Carter v. Glass Co.* 85 Ind. 180 ; *Jackson v. Smith* 21 Wis. 26 ; *Roman v. State* 41 Wis. 312 ; *Van Buskirk v. Daugherty* 44 Ia. 42 ; Hilliard's New Trials 200, 204 ; and as to communications with outsiders : *Foster v. Brooks* 6 Ga. 287 ; 2 Graham & Waterman on New Trials 544; *Watertown Bank v. Mix* 51 N. Y. 558 ; *Nesmith v. Clinton Fire Ins. Co.* 8 Abb. Pr. 141 ; *Vanmeter v. Kitzmiller* 5 W. Va. 380 ; *McDaniels v. McDaniels* 40 Vt. 363 ; *Blalock v. Phillips* 38 Ga. 216 ; *Poole v. Chicago* 2 McCrary 251 ; *M'Lain v. State* 10 Yerg. 241 ; *Johnston v. Root* 2 Cliff. 108 ; 2 Gra. & Wat. N. Tr. 463.

CAMPBELL, J.   Relators apply for a mandamus to compel respondent to set aside a verdict and grant a new trial for misconduct of a jury after retiring to consider their verdict.

The jury were charged in the latter part of the day, and were out all night.   While out, they sent the bailiff in charge for beer, of which he brought and they consumed several bottles.   In the morning, the court, without objection from counsel, allowed them to go under charge of an officer to get breakfast at a hotel, and gave them proper cautions against communicating with others.   But it appears from admitted facts that while in the hotel they conversed with persons there, and made it known that they stood ten to two, and in

the dining-room openly discussed that fact in such a way as to indicate their position. They drank in the bar-room whisky and other liquors two or three times, at the invitation of the landlord and of each other. One of the jury had a conversation with the stenographer, and asked him how the sentiment was outside, and was told it was that the jury would disagree or find for the plaintiff. He was also informed how the jury stood, and some jocular remarks passed on the subject. The jurors were where they could converse freely with third persons during the time they were absent from their jury room, and did talk with them. They rendered a verdict an hour or two after they came back.

Upon these undisputed facts before him on the motion the circuit judge declined to order a new trial, on the ground that he had become satisfied the jury had not been influenced in their action by anything which had occurred, and that their verdict was right and just. He subsequently made inquiry in part by means of some affidavits not used on the motion, which he returned with the order to show cause as a further support to his decision, but which we declined to receive as ex parte and foreign to the inquiry as it stood for his decision and on this hearing.

The courts have exercised some discretionary power in dealing with conduct of juries while not in improper communication with other persons, and have not always disturbed verdicts for misconduct, which were the result of the uninfluenced action of the jurors alone. But when juries get into communication with strangers the case is different, and cannot be dealt with so easily.

The rule of the common law was so strict that jurors, during their consultation, were required to be kept, not only secluded, but fasting. It is not now required that they shall be deprived of food ; but the whole object of a jury trial would be subverted if they can be allowed to communicate with other persons, unless for some purpose of necessity, and to indulge in social intercourse or in drinking among them. Any course which would expose them to the danger of influence outside of the jury room is very clearly illegal. The

circuit judge, recognizing this, assumed, nevertheless, to inquire whether any injury had actually resulted; and he also suggests that, whether he was right or not in this, the relators should be precluded from redress here, because they have taken out a writ of error with a bill of exceptions, and filed a stay-bond.

If the grounds for relief were such as could be set out in a bill of exceptions, there would probably be no need of this application. But a bill of exceptions in a civil case can include no ruling made after verdict, and the facts now relied on were not brought to light until afterwards. If relators were correct in their claim, the jury had ceased to be a legal jury authorized to act on their rights, and they should not be barred of this vital objection unless they have done some act inconsistent with reliance on it. When the circuit judge sustained the verdict and rendered judgment, the only means they had of staying execution were the issue of a writ of error and the filing of a bond. Action so taken cannot be treated as a voluntary waiver of rights.

In order to find out how far the action of the jury had been affected by the improper influences to which they were exposed, it would be, and seems to have been, found necessary to inquire into the mental processes and sentiments, and the sobriety, of the various jurors. This of itself is illegal. It is contrary to public policy to make inquisition into the discussions or opinions of individual jurors. If their acts are unlawful they may invalidate their verdict, but their opinions and statements are privileged, and no court can compel them to disclose them, or draw them out from any of the others. If a single juror is improperly influenced, the verdict is as unfair as if all were. And if the court refuses to relieve on account of its own view of the propriety of the verdict, it practically usurps the place of the jury and makes the verdict. Still less is it admissible to settle private rights on any assumption of the respectability or good character of jurors, or by any ex parte inquiries of the court. The presumption is always in favor of good character; but the law concerning juries provides strictly that all jurors shall be

secluded from outside influence, and presumes that such influence may act upon some of them, and may act so as to be beyond detection. Human nature is no different in jurors than in others, and men are not always conscious how far they are in fact biased, and their inward sentiments cannot be ascertained.

In the present case we have a juror shown clearly to have expressed anxiety to know what outside sentiment was concerning the very case on which he had deliberated. Whether he had leaned one way or the other before, the very fact that this was brought before his mind and inquired into, introduced an element of disturbance very likely to affect himself and others. If on the trial of the cause evidence of public sentiment had been allowed to go to the jury, no amount of counter-affidavits or protestations could have cured the error. That which has a manifestly dangerous tendency must be treated as presumptively mischievous, and there is in such a case as this no legal method of removing the presumption.

The whole jury was exposed to and actually encountered intercourse with persons who learned from themselves just how they stood, and who had great facilities for exercising influence. If this could be done lawfully there would be no conclusive reason for shutting up a jury at all. There could be no measuring just how far they may be exposed lawfully, and when the exposure becomes unlawful. The only safe rule must be to treat the jury as disqualified to settle the rights of litigants as soon as they cease to be guarded against unlawful contact with the outside world. The right to a strictly preserved protection against undue influence cannot be made to depend on discretion. The law itself has secured to every one his privilege to an impartial tribunal of jurors, and to avoid all cavil has furnished its own guards to secure it.

It is, perhaps, difficult to say how far the court below could have overlooked the things complained of in the jury-room, if they had stood alone. But we do not think there is any right to disregard what was done out of the jury-room. The departure from the proper course of duty was not techinal, but real and substantial, and involved several different kinds

of acts of directly mischievous tendency, and whether the jury actually yielded to their influences against relators or not, there can be no presumption or ascertainment in any satisfactory legal way that this was not done. The annulment of the verdict was a matter of right.

The able circuit judge, in his return, appears to have understood the order to show cause as involving some personal censure. This it is not the purpose of appellate proceedings to apply. The duty of reviewing judicial action is confined to legal errors, and it is always presumable and probable that the action reviewed is conscientious and upright.

The mandamus must be granted.

The other Justices concurred.