## LLOYD GRABLE v. STATE.

No. A-8838.    April 26, 1935.
(44 Pac. [2d] 152.)

Gill & Caldwell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Eula Erixon, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, hereinafter for convenience called the defendant, was by information jointly charged with Oscar Smith, Roy Smith, W. F. Cummings, Millard Pack, and Daniel Smothers, with the crime of attempting to rob the First National Bank of Fletcher, Okla., by the use of firearms; was tried separately, convicted, and his punishment fixed at death by electrocution, and his case is here on appeal.

The condition we find this record in it is deemed necessary to mention the substance of the testimony. The defendant was positively identified as being at the scene of the robbery, and was afterwards arrested at the home of a Mr. Avery, in company with W. F. Cummings, who was also identified as being a member in the attempted robbery. The defendant denies he took any part in the bank robbery or was present.

The defendant has assigned 22 errors which he alleges are sufficient to warrant this court in reversing his case. The only assignment this court deems necessary to consider in reaching an opinion in this case is the seventeenth assignment, which is as follows:

"Error on the part of the bailiff in going into the jury room and conversing with and praying to and for the jury, in violation of the court instructions."

Section 3081, O. S. 1931, is as follows:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, or do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

By this section it will be seen that the only acts permitted to be performed by the bailiff are to keep the jury together in some private and convenient place and not to permit any person to speak or communicate with the members of the jury nor to do so himself unless by order of the court; or to ask the jury if it had agreed upon a verdict; and to return the jury into court when it has agreed or to return the jury into court by order of the court.

It is not disputed that M. L. Bergan, an ordained minister, was the bailiff sworn to attend the jury and to serve the jurors until they had reached an agreement or failed to reach an agreement, and to report the wishes of the jury to the court. That the jury was taken to the city hall in the city of Lawton, in Comanche county, Okla., the county in which the defendant was tried. That after the jury had been taken to the room in the basement of the city hall to consider its verdict, it was taken to dinner and came back through the city hall and again went into the basement. The bailiff Bergan stated:

"I did not notice any men in the city hall except the officers as we went down to the basement; I had furnished the jurors with paper, and in about fifteen or twenty minutes they knocked on the door and I opened the door and he told me what he wanted. I told him 'No,

wait a minute', when he told me what he wanted me to come inside for. He said the jury wanted me to come in and offer a word of prayer; I told them to wait a minute, but I had asked them if they had agreed on a verdict; he said they had. I went and got a drink of water and came back and asked him, 'Stanley, have you reached a verdict?' and he said, 'Yes, dad.' I asked no question, said nothing to either of the jurors, offered a word of prayer, and turned around and walked out. I am an ordained minister. I offered the prayer in the presence of all the jurors."

The testimony further shows that before they got to the basement the bailiff in charge of the jury had to find a police officer to unlock the door so the jury could be taken into the basement of the city hall. The record shows that at the time the bailiff offered the prayer the jury was still in the jury room; had not been taken into court; and had not returned its verdict into court.

The statement of the bailiff further shows that when he stepped in where the jury had been deliberating on the verdict, he pulled the door to, and when he came out he opened the door and kept it open. The witness further stated that before noon the jury had deliberated in the counsel chamber of the city hall; that while they were eating dinner he was directed by either Mr. McQuistion or Mr. Dwight to take the jury to the basement for their further deliberation.

Mr. Sneed, who was foreman of the jury, among other things, stated:

"We had agreed upon a verdict. I don't remember whether we had notified the bailiff we had agreed upon a verdict at the time we called him or not."

Mr. Sneed further stated that when the bailiff entered the room "we told him we had reached a verdict—I think

we did—when the bailiff came in some one asked if we could have a prayer; I think it was Mr. Bates."

Mr. Bates says;

"I can't exactly say what our motive was but I just wanted to feel that I was clear, and was being guided by what I had done, I knew the bailiff was a minister of the gospel."

It is true we are commanded to pray without ceasing. In the third chapter of Ecclesiastes, among other things, we are taught:

"To everything there is a season,
a time for every purpose under the heaven;
a time to weep and a time to laugh;
a time to mourn and a time to dance;
a time to get, and a time to lose;
a time to keep, and a time to cast away;
a time to love and a time to hate;
a time of war and a time of peace."

Under the provisions of the law in this state, it is perfectly clear that it was not the proper time to pray, and, under the circumstances and admonitions of the court to the bailiff, the prayer in the jury room before the jury returned its verdict into court was a violation of the statute, the admonition of the court to the bailiff, and the instructions of the court to the jury, and was prejudicial to the rights of the defendant.

This is the first time, so far as this court has been able to find, where the jury and bailiff violated the law, and the instructions of the court by having a conversation and prayer in the room where the jury had been deliber-

ating on its verdict. One of the jurors, Mr. Bates, says they had agreed upon a verdict before they called the bailiff into the room, but when asked as to why he wanted prayer, he said, "Well, I can't just exactly say, but I just wanted to feel that I was clear, and was being guided by what I had done."

An effort is made by the state to justify the action of the jury and the bailiff by attempting to show that a verdict had been agreed upon when they called the bailiff into the room and he offered prayer. It is necessary to keep in mind this fact and that is that at any time before the jury had left the jury room any member of the jury could have changed his mind and insisted on a different verdict. Any action, conversation, or prayer in the jury room, in the presence of the jurors, before the verdict had been returned into open court, was in violation of the law, unwarranted by the admonition of the court and its instructions, and violated the rights of the defendant.

The question of the misconduct of the jurors and officers of the court has been before this court in many ways. In Ridley v. State, 5 Okla. Cr. 522, 115 Pac. 628, the court said:

"It is the duty of courts to enforce a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury, and the purity of jury trials."

In Selstrom v. State, 7 Okla. Cr. 345, 123 P. 557, the court said:

"Where the bailiff calls a juror from the jury room after the case has been finally submitted to the jury, and the juror leaves the bailiff and goes into another room

and converses with the sheriff, and his conduct and conversation during that time is unexplained, it is an abuse of discretion for the trial court to overrule the motion for a new trial."

In Watson v. State, 7 Okla. Cr. 508, 124 Pac. 329, this court said:

"That after the jury have retired for deliberation, if they shall desire to be informed on a point of law, they must be conducted into the courtroom and the information given in the presence of or after notice to the counsel for both parties, it is reversible error for the judge to follow the bailiff to the jury-room and there instruct the jury as to the effect of a verdict rendered by them; none of the counsel being present."

We could cite many more authorities upon the question of the misconduct of the courts and jurors, but, as stated heretofore in this opinion, we have been unable to find any case directly in point. Suffice it to say that in this case the defendant was on trial for a crime, the punishment of which could be death, and in this case upon the verdict of guilty the death penalty was imposed. It is of the utmost importance that the jurors and court officials should be held to the strict observance of the law describing their procedure and duties, and their conduct should be such that no breath of suspicion can attach to them of having acted in a manner prejudicial to the accused or in his favor. Under the statute (O. S. 1931, sec. 3085), if the jurors were in doubt as to how to proceed, they should have required the officer in charge to conduct them into court and the necessary information would have been given by the court in the presence of the parties.

In this case if the jurors felt they desired a word of prayer it was the duty of the jury to ask to be brought

into open court and return its verdict, and then advise the court they desired a word of prayer, or to have retired to some private room and asked the bailiff to have said a word of prayer for their benefit. If such conduct as was participated in by the jurors in this case should be tolerated and approved by this court, it would tend to destroy the sacredness and privacy of a jury in its deliberations when any case was submitted to it.

As there will be a new trial in this case, we refrain from discussing the other errors assigned, or from saying any word that would indicate our opinion as to the guilt or innocence of the defendant.

For the errors herein stated, the judgment of the trial court is reversed, with directions to grant the defendant a new trial.

EDWARDS and DOYLE, JJ., concur.