## CLARK JOHN PARKER v. STATE.

No. A-10857.   May 5, 1948.

(193 P. 2d 607.)

Amos J. Nichols, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Elmer Adams, County Atty., Tulsa County, of Tulsa, for defendant in error.

BAREFOOT, P. J.  Clark John Parker was charged in the district court of Tulsa county with the crime of burglary in the second degree; was tried, convicted and sentenced to serve a term of seven years in the State Penitentiary, and has appealed.

Six assignments of error are set out in the petition, and the same errors are listed in the brief of the defendant.  Defendant then states that the case can be argued under one proposition, and that "the most important error is that of the misconduct upon the part of the bailiff." This is assignment No. 6, and is as follows:

"That the jury bailiff was guilty of misconduct in that the jury received the case around 12:00 o'clock noon, and asked to be allowed to go to lunch, and was informed by the bailiff that the county did not provide for feed-

ing the jurors except in a murder or rape case, and that the jury thereupon rendered a hasty and unjust verdict."

The jury returned a verdict of guilty "as charged in the information herein" and fixed defendant's punishment at seven years in the State Penitentiary at McAlester, the maximum provided by the statute for the offense charged.

Defendant filed a motion for new trial in which he urged the action of the bailiff as grounds for a new trial. Upon hearing the motion, defendant offered the testimony of the bailiff and of the minute clerk. The bailiff testified that he took the jury to the room about 12 o'clock, and shortly thereafter some one knocked on the door, and stated: "We are ready to go to lunch"; and that: "I told him we wasn't ready to go to dinner yet." He testified that this was all that was said. He was asked by the attorney for defendant:

"Q. Did you instruct that juror, or say to that juror at that time that you did not provide meals or allow the jurors to go to dinner except in murder cases? A. Oh, no. Q. And the rape cases? A. Oh, no, never said anything like that."

He then testified that he thought he made the statement to the attorney for defendant and the clerk that it was his understanding that the county did not furnish lunch except in murder or rape cases, but that he did not say that to the jurors.

The minute clerk testified:

"Mr. Welch (the bailiff) stated that they asked to go to lunch and I don't—I am not sure whether he told them they could not go to lunch except on murder or rape cases, or whether he told [us] that was his understanding."

It is the contention of the defendant that the members of the jury were "most eager to go to lunch at the noon hour," and for that reason proper consideration was not given by them in this case.

We think it just as logical to assume that the jury had reached a verdict, considered their work completed, and decided to go to lunch before court reconvened after the lunch hour. It takes a considerable quantity of refined and circuitous reasoning to convince one that the remark complained of amounted to an attempt on the part of the bailiff to coerce the jury into returning a verdict immediately, or that it had such effect. As above stated, the trial court heard testimony on the motion for new trial, and had all the matters before it, and concluded that the defendant's rights had not been invaded, and with this we agree.

It is of the utmost importance that jurors and court officials should at all times be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. However, this court will not set aside a verdict because of comments between jurors and the officers, which, even though improper, are not of a character calculated to prejudice accused, or to influence the verdict. We deem it sufficient to say that there was no prejudice to the substantial rights of the defendant resulting from the irregularity complained of, and that the trial court did not err in refusing a new trial upon this ground.

Defendant in his brief states:

"The plaintiff in error does not contend that the case should be reversed, but seriously urges and earnestly re-

quests the court to view the record and the briefs in this case for the purpose of modifying the sentence imposed."

There can be no question of the right of this court to reverse, affirm or modify the judgment appealed from, 22 O. S. 1941 § 1066, and it will do so when the facts justify. This is a power given this court by statute, and not allowed to all appellate courts in criminal cases. However, a jury's verdict of conviction and court's judgment thereon will not be modified on appeal unless some action in the trial of the case causes the jury to render a verdict under passion or prejudice, or the sentence imposed by the judgment is excessive under the facts. Jones v. State, 84 Okla. Cr. 81, 179 P. 2d 484, 485.

The defendant here was charged with breaking and entering the apartment of Mr. and Mrs. Carl Buerbaum, in the James Chapman Apartment house, 720 South Denver, in Tulsa. The state offered four witnesses, Mr. John McConnell, who lived in the apartment directly across the hall from the one entered; Stephen Petratis, the manager of the apartment house, and Mr. and Mrs. Buerbaum.

Mrs. McConnell testified that she was in her living room reading, and that the door of her apartment was open, but the louvers door closed. Shortly before 5 o'clock in the afternoon on the date charged, she heard a knock on the door across the hall. She knew the occupants were not at home. She then heard a slight noise, as of metal scraping on metal, and after listening five minutes or so, looked through the louvers of her door, and could see the legs of a man at the Buerbaum door. She waited until he went inside, and then telephoned the manager of the apartment house.

Mr. Petratis testified that when he reached the Buerbaum apartment, in response to Mrs. McConnell's tele-

phone call, the door was slightly ajar, and he went in. He found the defendant in the bedroom, standing by a chair upon which there was a zipper bag, open. He could see a fur coat, which he recognized as one worn by Mrs. Buerbaum, in the bag, and the radio from the bedside table on the coat, in the bag. On being questioned about his presence in the apartment, the defendant stated that he was there to visit some one, giving the name. Witness told him there was no one by that name living in the apartment building, and took the defendant down to his office, and called the police. He testified that Mr. Buerbaum, who was in the oil business, told witness when he left town, and that he had checked the apartment to see that it was locked.

Mr. and Mrs. Buerbaum testified that they were very careful about locking their apartment when they left, and were out of Tulsa on the date their apartment was entered. That when they left the coat was hanging in the closet, and the radio connected on the table by the bedside. They did not know the defendant, and did not give him permission to enter their apartment.

The defendant did not take the witness stand, and offered no evidence.

Our analysis and study of the entire record satisfies us that the defendant had a fair trial; that the conviction is a just one, and the errors complained of are not such as to deprive defendant of any constitutional or statutory right. There is nothing in the record which would justify a modification of the judgment and sentence.

The judgment of the district court of Tulsa county is therefore affirmed.

JONES and BRETT, JJ., concur.