COPENHAVER v. STATE.

No. A-11236. Dec. 20, 1950.

(225 P. 2d 807.)

146

A. O. Manning, Fairview, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.  Plaintiff in error, Ben Franklin Copenhaver, who will hereinafter be referred to as defendant, was charged by information in the county court of Garfield county with the operation of an automobile while under the influence of intoxicating liquor, was tried before a jury and found guilty, with punishment left to the discretion of the court.  Thereafter the court assessed a fine of $125 and costs in the amount of $38.90. Appeal has been duly perfected to this court.

Counsel for defendant, for reversal urged:

"(1) That the verdict was rendered by and through bias and prejudice, and is not supported by sufficient evidence.

"(2) That the court erred in matters of law during the progress of the trial.

"(3) That the punishment is excessive and not supported by the evidence.

"(4) That the court erred in overruling the defendant's motion for new trial."

The first three assignments of error are urged together, the gist of the argument being that the misconduct of the trial judge prevented the defendant from having a fair and impartial trial by reason of the fact that during the voir dire examination by defense counsel of prospective jurors the trial judge remarked, "I want to commend that juror for his attitude."

With reference to the incident complained of, the record discloses the following:

"Upon the request of A. O. Manning, attorney for the defendant, said request being made at the time the Motion for New Trial was made in this case, requested that the Judge of the Court dictate into the record the proceedings which were had in the Court in this case regarding the selection of the jury, the court sets forth the following facts:

"Mr. Manning was examining the prospective jurors for their qualifications to set on the jury, and, among other questions, the following questions were asked: 'You don't believe that Bill Large, State Highway Patrolman, would ask that an information be filed against this defendant unless he had some reason for it, do you?', to which the jurymen would answer that they didn't believe Mr. Large would make such a request without there being a reason for it. Then the question would be asked, 'Well, does the filing of this information then make an impression upon your mind?', to which the jurymen would answer 'yes', and the question would be asked—'It would take evidence to remove that impression from your mind, would it not?', and the jurymen would answer 'yes.' This line of questioning was applied to four jurymen who were then dismissed for cause upon request of the defendant. The same line of questioning was applied to Virgil Streck, who, upon being asked whether the filing of the information made an impression upon his mind that would re-

quire evidence to remove it from his mind, Mr. Streck, the prospective juror, answered the question as follows: 'that seems to be a good way to get off this jury, but I don't feel that way.' Whereupon the court, in the presence of the jury, announced from the bench: 'I want to commend that juror for his attitude.' No objections were made by either the counsel for the State or the defendant to either the question or the comment of the Court, nor was the juror objected to, and he was allowed to set in judgment of the case, and both parties having announced 'ready for trial' by and through their respective counsel, * * *."

This court has held that it is not every improper remark of a trial court that will justify a reversal and that the entire record will be considered to determine whether the statements complained of were so grossly improper as to prevent the accused from having a fair trial. Calloway v. State, 38 Okla. Cr. 418, 262 P. 696; Stacey v. State, 79 Okla. Cr. 417, 155 P. 2d 736; Hill v. State, 78 Okla. Cr. 384, 148 P. 2d 992; Nix v. State, 20 Okla. Cr. 373, 202 P. 1042, 26 A.L.R. 1053.

In the within case a close analysis of the method of counsel in questioning jurors on voir dire examination discloses that he would first propound a leading question that would elicit the expected and normal answer, in itself harmless enough. But thereafter the further leading question: "It would take evidence to remove that impression from your mind, would it not?" would confuse the juror and the first four answered "yes" and were thereby disqualified for cause, when as a matter of fact they might not have been disqualified at all, and were not, unless by "yes" they meant they had formed a fixed opinion as to the guilt or innocence of the accused that would require evidence to remove. Certainly an impression was made, but it might simply have been that some

prosecuting witness had undoubtedly thought defendant guilty of the crime with which he was charged, as ordinarily it would not be assumed that the officer or other person swearing to the charge had committed perjury. But merely because a person is charged with crime should not cause any person to summarily conclude the accused to be guilty.

As indicated, the effect of counsel's questioning was to confuse the jurors and to have them disqualified for cause, but one juror, alert to this, did not give the expected answer but let it be known that he was aware of his opportunity to disqualify. The court commended this juror. If the remarks of the juror and the court prejudiced defendant in any way, which is not apparent, counsel brought this on.

In the case of Bond v. State, 54 Okla. Cr. 39, 14 P. 2d 425, 426, we said:

"A judgment of conviction will not be reversed because of the remarks of the trial judge, where such remarks were invited or encouraged by the conduct of the defendant's counsel, unless it is clear that the impropriety complained of amounted to a deprivation of some constitutional or statutory right guaranteed to defendant."

The defendant further contends that the evidence is insufficient to sustain the conviction. We have carefully read and reread the evidence, and frankly we cannot account for the action of the jury, except that they had the opportunity to see and hear the witnesses, etc., and they believed the evidence of the state, and did not believe defendant and his witnesses. In the case of Walker v. State, 89 Okla. Cr. 284, 207 P. 2d 341, 342, where the defendant there was convicted by a jury of the

crime of driving a motor vehicle while under the influence of intoxicating liquor, we said:

"Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts.

"The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis, in the evidence, on which the jury can reasonably conclude that the accused is guilty as charged."

To demonstrate what we mean, and with the above in mind, we shall consider the evidence.

The state used four witnesses: Bill Large, highway patrolman, C. R. Bob Parker, cafe operator, Jerry Allen, funeral director, and Elwood Lee, highway patrolman, all of Enid.

The undisputed evidence on behalf of the state developed that about 1:10 o'clock a. m., on September 2, 1948, the state's witnesses were in front of the Highway Patrol Station southwest and near the intersection of Van Buren and Market streets in Enid, Oklahoma. C. R. Bob Parker had just been under Jerry Allen's car trying to replace a cotter key with a bailing wire, and he, Allen, Large and Lee were standing by. Suddenly there was a sound to the west of glass being broken on the pavement, and a Ford coach, which proved to be a 1935 model, was observed to be approaching along U. S. Highway No. 60 from the west, and coming toward the intersection with U. S. Highway No. 81, the latter highway running north and south. Patrolman Large had a flashlight in his hand, and flagged down the approaching car, which was being driven about 25 miles per hour. The defendant Copenhaver was driving the car and two other persons, Jay Copenhaver and Martin Thilsted, were

in the car with defendant. From this point on there was a sharp conflict in the evidence material to support the charge.

The officers contended that they stopped defendant by reason of its appearing that some one in his car had thrown some glass object on to the highway pavement causing glass to be scattered into the highway in violation of law, Tit. 21 O.S.A. § 1690, and for the further reason that they also heard laughter from the car, and noticed that it was being driven in the center of the highway, and deemed it their duty to investigate. The other two state's witnesses corroborated the testimony of the officers as to the breakage of glass on the pavement. Witness Large claimed that after defendant brought his car to a stop, he was slumped over the wheel and his breath smelled of alcohol; that he required defendant to get out of the car and that he did and seemed to have difficulty in getting his balance; that on being asked about the broken glass, defendant said: "One dropped from the car", referring to a bottle. Witness further stated that defendant's manner of walking was that of a person under the influence of intoxicating liquor, being unsteady, and that his eyes were watery and face flushed; also, that he made statements in a repetitious manner. That he kept repeating that he was a farmer and kept asking what he was arrested for, although he had been told why he had been arrested.

Officer Large testified that they found seven or eight empty beer bottles behind the front seat of defendant's car and something less than a case of empty beer bottles in the rear turtle and found two full bottles of beer in the front of the car. He further testified that after the arrest he and Officer Lee and Mr. Parker found broken glass in the middle of U. S. Highway 60 about

25 feet west of the intersection of the highways mentioned, and that the glass covered an area of about 20 feet, and that the glass was from a broken brown beer bottle. He testified that they removed the glass from the highway.

Patrolman Lee testified substantially as Patrolman Large, and the witnesses Parker and Allen testified substantially as the officers except as to the intoxication of the defendant. They did not give any testimony bearing on the intoxication or nonintoxication of defendant. Apparently they claimed to not have had opportunity to smell his breath and did not observe the actions of defendant about which the officers testified.

The court having overruled a demurrer to the state's evidence, defendant and several neighbors and acquaintances in and near Cleo Springs testified in behalf of the defendant.

Eldon E. Hood, farmer of near Cleo Springs, testified that he was a neighbor of defendant, and that on the night of September 1, 1948, defendant drove by his house and took witness to Cleo Springs and that witness put some empty beer bottles in defendant's car with intention of getting a case of beer in town; that in Cleo Springs witness drank a couple of bottles of beer and then went out in town and during his absence defendant left for Enid. Witness stated that he had seen Jay Copenhaver and Martin Thilsted with Ben Franklin Copenhaver. He further testified that he had known defendant for 15 years, and that he had never seen defendant drink intoxicants of any kind, not even a bottle of beer. Witness stated that he had placed two bottles of beer on the floor behind the seat in defendant's car.

Jay Copenhaver, cousin of defendant, testified that defendant drove by his home on the evening of September 1, 1948, and took him to Cleo Springs, where witness, Eldon Hood and Martin Thilsted visited a local cafe; that witness and Hood drank a couple of bottles of beer, but defendant ate a hamburger and drank a cup of coffee. Witness further stated that the generator on his car was out of order and he made arrangements with defendant to drive him to Enid to get another one and they got there about 1:00 a. m., and that shortly before reaching the highway patrol station, there they noticed a bottle lying on the pavement and that defendant pulled over trying to miss it, but hit it and glass flew up and then the highway patrolman ran out and stopped them and took them to jail. He swore that defendant did not drink beer or intoxicating liquors.

Martin Thilsted testified substantially as Jay Copenhaver and further testified that early on the evening of September 1, 1948, he had driven over to defendant's home and defendant drove to Aline and then to Cleo Springs, arriving there about 7:30 p. m.; that he had known defendant five years and had never seen or heard of him drinking but that witness and Jay Copenhaver drank some beer, but were not intoxicated; that they drove to Enid where they were arrested on arrival by the highway patrolmen. He admitted that they paid a $10 fine and $7.50 costs each on pleading guilty to being drunk, but stated that was cheaper than employing an attorney to conduct their defense.

Ben Franklin Copenhaver, the defendant, testified substantially as the other defense witnesses. He stated that he pulled his car to the left as he approached the highway patrol station in Enid, trying to avoid striking a bottle that was in the road, but that he ran over it and

shattered it, and that Officers Large and Lee ran out and one was waving a flashlight and calling for them to stop, which he said they had commenced to do anyway on account of stopline. Defendant claimed that he went to get out of the car at the request of Officer Large and stepped on Large's foot, he was so close to the car, and that accounted for his going down more than normally. He denied drinking or being drunk, stating that he had never, during his life, been a drinker of intoxicants of any kind.

Leo Hamen testified for defendant, stating that he had known defendant ten or twelve years, and that witness operated a cafe in Cleo Springs and owned the only beer parlor in the town, and that defendant ate supper in his cafe the night of September 1, 1948, and did not drink any beer, and in fact that witness had never in his life seen defendant drink a bottle of beer; that defendant and Jay Copenhaver and Martin Thilsted were in and out of his cafe that night from about 7:30 until he closed at 12 o'clock.

On rebuttal the highway patrolmen testified that defendant's companions in his car the night of the arrest had an aroma of intoxicating beverage about them, that the clothing of each was in disorder and that one had left the zipper of his trousers open; that they staggered and that in their opinion were intoxicated.

The task of the jury was to determine whether or not the defendant was driving a motor vehicle while under the influence of intoxicating liquor. The jurors could have found for the defendant by concluding that the officers were mistaken as to defendant being intoxicated in view of the strong evidence of defendant being a non-user of alcoholic beverages, and the admission by his two

companions that they had been drinking beer, which could have accounted for the liquor aroma. On the other hand, the jurors had to believe that at least the defendant committed perjury, if not each of the witnesses for defendant, as their testimony was not based on opinion evidence formed from a set of recited circumstances, as in the case of the officers, but on definite and positive testimony of absolute abstinence from the use of intoxicating beverages.

There are, of necessity, personal factors considered by a jury, where their function is to observe the person charged, his demeanor, the demeanor of his witnesses, tactics of counsel, etc., as triers of the facts.

We have carefully read the instructions given by the court and the entire record and conclude that the instructions were proper and that the case was fairly submitted, and this court is bound by the principle of law set forth in Walker v. State, supra, and the list of cases therein cited. But we do feel that justice will best be served in the within case by exercising the authority of this court by statute granted, Tit. 22 O.S.A. §1066; Griffin v. State, 84 Okla. Cr. 207, 180 P. 2d 844; Maddox v. State, 12 Okla. Cr. 462, 158 P. 883; Daves v. State, 77 Okla. Cr. 343, 141 P. 2d 603; Parker v. State, 86 Okla. Cr. 388, 193 P. 2d 607, and reducing the punishment assessed to a fine of $50.

As so modified, the judgment of the county court of Garfield county is affirmed.

JONES, P. J., and BRETT, J., concur.