Jake Edward AUSTIN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12058.

Criminal Court of Appeals of Oklahoma.

Dec. 8, 1954.

Irvey C. Owenbey, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Jake Edward Austin, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Oklahoma County with the crime of manslaughter in the first degree after former convictions of felonies, was tried before a jury and convicted, but the jury being unable to agree upon the punishment to be assessed, left the same to the trial judge, who assessed a penalty of 30 years confinement in the State Penitentiary.

Appeal has been perfected to this court by transcript, no evidence being shown except that which is set out in a bill of exceptions and incorporated in the transcript.

For reversal counsel advances four specifications of error.

It is first contended that "The court erred in sentencing the defendant to serve a term of thirty years in the penitentiary; the death of deceased being the result of an automobile accident."

It is alleged in the information that on March 28, 1953 the defendant in Oklahoma County did then and there wilfully, wrongfully, unlawfully and feloniously cause the death of one Marjorie Irene Smyth, by unlawfully, wilfully and wrongfully directing a 1950 Ford coach motor vehicle in a westerly direction on Northwest Fifth Street, Oklahoma City, while he, the said defend-

ant, was under the influence of intoxicating liquor, and the said defendant drove the said automobile at said time and place into and against a 1950 Chevrolet car in which the said Marjorie Irene Smyth was riding as a passenger, and then and there inflicted certain mortal wounds and injuries upon her from which she died.

Count two of the information alleges substantially the above outlined statement, and further alleges that the defendant drove his said automobile in a careless and wanton manner without regard to the safety to persons and property and at a speed greater than was reasonable and proper and greater than would permit him to bring it to a stop within the assured clear distance ahead.

It is further alleged in the information that the defendant had been formerly convicted of two felonies, to-wit: the crime of robbery by force on November 20, 1940, being case No. 10047 in the district court of Tulsa County, Oklahoma, and the crime of burglary with intent to commit theft on November 20, 1949 in Harris County, State of Texas, criminal district court case No. 61178.

The jury might have found the defendant guilty of manslaughter in the second degree if it had not believed that he was intoxicated while driving his vehicle against that in which the deceased was riding, and had merely found him guilty under the second count, but defendant was found guilty of manslaughter in the first degree, as was authorized by reason of the allegation of the first count. Manslaughter in the first degree is punishable by imprisonment for a term of not less than four years and may have been for life. And by provision of the habitual criminal statute, 21 O.S.1951 § 51, the minimum sentence would be ten years, but could have been for life.

While this court possesses the power, 22 O.S.1951 § 1066, to modify the verdict of a jury or the judgment of a trial court, it should never exercise such power except for compelling reasons, based on a consideration of facts and circumstances appearing of record. And where the evidence on which a person charged with crime was found guilty is not in the record, the court on appeal must assume that it justified a conviction. Killough v. State, 6 Okl.Cr. 311, 118 P. 620; Ex parte Lee, 87 Okl.Cr. 427, 198 P.2d 1005. If the evidence supports the summarized allegations contained in the information, as it is seen we must assume, then we are faced with the fact that the defendant here brought about the death of Marjorie Irene Smyth, and but for his misuse of the highways, and but for his violation of the laws and the rights of other users of the streets and highways, she would not have come to her death, as set forth in the information. We must assume that the court, long experienced in the trial of persons charged with crime, based the sentence imposed and judgment entered upon the evidence that he heard during the trial of the case, the weight of the evidence being influenced by his opportunity to look into the faces of the witnesses, noting their demeanor and hearing and considering their peculiar opportunities to possess knowledge of the matters about which they may have testified. Certainly the charge was a most serious one, one that involves conduct that threatens the peace and safety of every citizen of the United States if such conduct is not taken seriously by the general public and the law enforcement officials of the land. We have before us no facts or circumstances that would justify interfering with the judgment entered.

It is finally contended that "the court erred in overruling defendant's motion to instruct the jury not to consider the question of the assistant county attorney to the court, and the reply thereto by the court, and by reason of the misconduct of the county attorney and the court, which denied to the defendant a fair and impartial trial."

The basis for the above proposition is set forth in defendant's motion for new trial as follows:

"Third: That after both the State and the defendant had rested, and the court had directed the jury to retire

to consider their verdict, and immediately after the jurors stood up, preparatory to leaving the courtroom, the county attorney, addressing himself to the court, said: 'How long do you think * * *?' and the court replied: 'About fifteen minutes', and counsel for the defendant immediately asked of the county attorney: 'What was that you said?', as the last part of his question to the court was in such a low voice that defendant's counsel could not hear the two or three words at the end of the question. That the county attorney then turned directly to defendant's counsel and said: 'I asked the court: "How long do you think *I talked?"'*

"Counsel for defendant believes that the jurors heard only what he heard, when the county attorney first asked the court: 'How long do you think * * *?', and the answer of His Honor, the court, to-wit: 'About fifteen minutes.'

"And counsel for defendant believes that the jurors thereby got the impression that the county attorney had asked the court, 'How long do you think the jury will be out?' and that when the court replied: 'About fifteen minutes', that the jury thereby got the impression that the court believed a quick verdict of 'Guilty' should be arrived at.

"That such a question to the court while all twelve jurors were still in the courtroom, and starting out of the jury box, and the answer of His Honor, the court, *although unintentional* on the part of both the county attorney and the court, conveyed an unmistakable impression to the jury that the court thought a quick verdict of guilty should be found, and that such facts were highly prejudicial to the defendant, and prevented the defendant from having a fair trial."

A bill of exceptions was filed and on January 14, 1954 the court, by order nunc pro tunc permitted said bill of exceptions to be corrected as of December 31, 1953.

Defense counsel submitted his evidence to support the allegations contained in his motion for new trial, heretofore quoted. Such evidence supported the allegations in question, as well as other factual matters involving procedure.

The version of the assistant county attorney, Joe T. Martin, as to what happened is set out by stipulation in the bill of exceptions, as amended, as follows:

"7. Counsel for the State of Oklahoma says—and so testified, at the hearing on the motion of defendant for new trial that before commencing his final argument he had stated to the court, the Honorable Albert C. Hunt, that his final argument would likely not take more than thirty minutes. And then, that after he concluded his final argument to the jury, he simply said to the court: 'How long do you think I talked?' And that the court, the Honorable Albert C. Hunt, replied: 'About fifteen minutes.'

"8. Counsel for the State further says that, and so testified, at the hearing on the motion of defendant for new trial, that it seemed to him, although he was not sure, that some of the jurors had already filed out of the courtroom at the time he asked the question of the court.

"9. Counsel for the State further says that, and so testified at the hearing on the motion of defendant for new trial, that he does not believe his question and answer of the court affected the verdict of the jury one way or the other, and did not prevent the defendant from having a fair and impartial trial."

The court in his order overruling defendant's motion for new trial gave his version of the incident complained of as follows:

"19c. The court further finds that the allegations made by the defendant in the third cause of his motion for new trial, in so far only, as to what was said by the county attorney and by the court, are correct, but that the statement contained therein of the impression made upon the jurors thereby,

is *purely conjectural,* and that said statements were not prejudicial to the rights of the defendant, nor did they prevent the defendant from having a fair trial."

From the above we discover that the remarks complained of were made after the trial had closed and after the jurors had apparently been placed in charge of the bailiff and had risen to go to the jury room, and if counsel for defendant viewed things correctly, prior to any juror having filed out, but if counsel for the State was correct, after some of the jurors had probably commenced filing out.

As a predicate to our consideration of the above, we reaffirm the principle adhered to by this court from its beginning and illustrated in certain cases cited by the defendant, to-wit: Grable v. State, 60 Okl. Cr. 339, 44 P.2d 152; Ridley v. State, 5 Okl.Cr. 522, 115 P. 628; Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773.

In the Grable case it was said [60 Okl.Cr. 339, 44 P.2d 154]:

" * * * It is of the utmost importance that the jurors and court officials should be held to the strict observance of the law describing their procedure and duties, and their conduct should be such that no breath of suspicion can attach to them of having acted in a manner prejudicial to the accused or in his favor."

We further approve the statement cited by defense counsel from Busch, "Law and Tactics in Jury Trials", as follows:

"From the earliest times it has been considered one of the essentials of a fair and impartial trial by jury that the jurors after their retirement should be undisturbed in their deliberations and kept free from any interference or suggestion from any source, whether from the judge, clerk, custodian, a party or his attorney, or an outsider.

"It is to assume this privacy and freedom from interference that the jury is placed in charge of a court officer. * * * *"

A study of the cases cited will disclose that the facts there were far different from the facts in the within case. No remark was made to any juror. It is apparent that the trial court did not consider the question asked him by the assistant county attorney of such nature as to draw the attention of the jury, or to possibly prejudice the rights of the defendant.

If the court had sensed any impropriety he could have been expected to admonish the assistant county attorney, and not have replied to his inquiry. Some attorneys are notorious for being verbose in arguing to a jury and often have to be called upon to close their argument instanter, when they have been notified by a rap of the gavel that their time for arguing the case is up. Apparently counsel had been allotted thirty minutes to close the State's case, but he completed his argument in time that seemed to him to be ahead of schedule, and innocently enough asked the court, "How long do you think I talked?" The court answered, "About fifteen minutes". If the jurors happened to hear only a portion of the inquiry, as counsel stated was the case with him, they might just as well have considered that the court was of the opinion that the State had not made out a case and that the jury would speedily so find, as to be impressed that the court thought the jury would speedily conclude that the accused was guilty of the charge.

There is no contention here but that the evidence of defendant's guilt was overwhelming. The jury did not fix the punishment. The trial court felt the apprehensions of counsel for the defendant so ill founded that he refused to stop the jury and admonish them concerning the incident called to his attention.

While we do not approve of counsel or anyone asking questions or making audible remarks in the presence of a jury after a case has been submitted and as they are preparing to leave the jury box and court room, still it must be obvious that it is not every improper remark made in the court room by an attorney, spectator, or of a trial court that will justify a reversal of a criminal case. If the remarks actually shown are such as might reasonably influence the jury against the defendant, a new trial should be granted, but where, after

a full consideration of the record before the court, it is clear that the verdict is right, which here in the absence of a fuller record must be assumed, and it is not clear that the jury was aware that counsel made any remarks, or paid any attention to the remarks not addressed to them, and if by any stretch of the imagination the statement made could be deemed prejudicial, it would have to appear that the jury heard only the portion of the remark that could be deemed prejudicial to cause a reversal of the case. See, for illustration of the principle, Miller v. Territory, 15 Okl. 422, 423, 85 P. 239; Oglesby v. State, 56 Okl.Cr. 286, 38 P.2d 32.

The case is affirmed.

JONES and BRETT, JJ., concur.