**Leonard KEAHBONE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12514.**

Criminal Court of Appeals of Oklahoma.

Nov. 21, 1957.

Neptune & Stocker, Bartlesville, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

Sam L. Wilhite, Anadarko, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Leonard Keahbone, defendant below, was charged by information in the County Court of Caddo County, Oklahoma, with the offense of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. He was tried by a jury, convicted, and his punishment fixed at a fine of $200 and thirty days in the county jail. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

The defendant complains that the trial court erred in overruling his motion for new trial and as grounds therefor he says: "The jury sought and received evidence out of court from the bailiff contrary to the provisions of 22 O.S.1951 § 857 not to permit any person to speak to the jury, nor to do so himself.

"That the fact that the jury did so seek and receive such evidence was discovered some days after the verdict of the jury had been returned and filed in this cause, and he offers to produce testimony in support of this ground at such time and place as the court may determine."

Thereafter, on May 17, 1957, the motion for new trial was heard, at which time Milton Singleton, a member of the jury, was called as a witness by the defendant. Mr. Singleton testified substantially as follows: that while the jury were deliberating on their verdict, they called the bailiff to the jury room. The bailiff "just stuck his head through the door." One of the jurors asked the bailiff if the defendant had a prior conviction.

The foregoing was elicited from the witness and nothing more. Of course, this question and the answer thereto constituted an unlawful invasion of the sanctity of the jury room by the bailiff, prompted, of course, by the jury itself. The answer thereto might have prejudiced the defendant's rights, and a presumption of prejudice immediately arose by reason thereof. Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637.

When counsel for the state sought to elicit the information as to what the bailiff's reply was, counsel for the defendant immediately objected. The objection was overruled and to the question, Mr. Singleton said the bailiff replied: "Well, he said, no, he said, it was his first offense, if it hadn't of been his first offense, they would have called him up to District Court or some other court, couldn't be brought in County Court. That was the answer he gave us." This answer by the defendant's only witness excluded the possibility of prejudice, and obviated the necessity of proof by the state.

The defendant relies upon the case of Lowrey v. State, supra. The Attorney General contends the outcome of the Lowrey case was based upon the actions of the Sheriff who was the principal witness for the state. We cannot agree. That case also involved the conduct of the bailiff. The state therein did not overcome the presumption of prejudice. The same is therefore not controlling herein. In the case at bar, the defendant's only witness testified to a state of facts sufficient for the creation of a presumption of prejudice, but then the presumption of prejudice was destroyed by his answer on cross-examination. Hence, the situation, in import, is similar to that in Sanders v. State, 50 Okl. Cr. 274, 296 P. 764, 765, wherein the affidavit of Mr. Buell, a juror and witness for the state on the motion for new trial, on its face overcame the presumption of

prejudice as the testimony of juror Singleton did herein. Therein, it was said:

"Where the bailiff violates the instructions of the court by making a statement to the jury, while the jury is considering its verdict, in the absence of any showing that the statement influenced the jury in arriving at its verdict, the rights of the defendant were not prejudiced."

Furthermore, in the case at bar, the statement made by the bailiff in response to the juror's question, as hereinbefore set forth, in fact was beneficial to the defendant and could therefore not have influenced the jury to the defendant's prejudice.

In Parker v. State, 86 Okl.Cr. 388, 193 P.2d 607, 608, it is held:

"It is of the utmost importance that jurors and court officials should at all times be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. However, this court will not set aside a verdict because of comments between jurors and the officers, which, even though improper, are not of a character calculated to prejudice accused, or to influence the verdict. We deem it sufficient to say that there was no prejudice to the substantial rights of the defendant resulting from the irregularity complained of, and that the trial court did not err in refusing a new trial upon this ground."

Such is the situation in the case at bar, and the judgment and sentence herein is accordingly affirmed.

POWELL, J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

It is conceded that in this case the bailiff communicated with the jury during their deliberation in violation of the Oklahoma Statutes, Title 22, § 857:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

This information was received by defense counsel after rendition of the jury's verdict. A motion for a new trial was filed offering to produce testimony as to this illegal communication. The motion for a new trial was heard and the following testimony produced by defendant:

"Questions by Mr. Wilhite:

"Q. Will you state your name to the court, please. A. Melton Singleton.

"Q. Mr. Singleton, were you a member of the jury who tried the case of State of Oklahoma against Leonard Keahbone, No. 9399 in this court, which case was tried on May 8th of this year? A. Yes, sir.

"Q. After the jury retired to the jury room to consider its verdict, I will ask you if additional evidence was sought by the jury? A. Well,—unfinished.

"Q. You can answer that yes or no. Answer it anyway you want to, but if you want to answer it—unfinished. A. Well, I would just like to tell what information we wanted to find out. We called the man that taken us into the jury room and asked him if this was this man's first offense.

"Q. Was that matter considered by the jury in its verdict? In reaching its verdict? A. Well, it was in my opinion and I would like to tell why that it was. You take a man, if it was his

first offense, I think he should have been given a lighter sentence, now I told the jurymens in there, I said, some people, I know it would me, if they would jerk me up and give me ten days in jail and a dollar fine—unfinished.

"Mr. Goodwin: I want to object to this, Your Honor.

"The Court: Sustain the objection.

"Questions continued by Mr. Wilhite:

"Q. Mr. Singleton, do I understand from what you have said that the bailiff, the man placed in charge of the jury by the Judge was called into the jury room and asked a question with respect to the the defendant's prior record, if he had any, is that right? A. That is what we wanted to find out.

"Q. Did the bailiff give you an answer? A. Yes.

"Q. That's all."

This testimony clearly establishes a violation of the statute above cited. The sanctity of the jury room had been invaded. The jury had received evidence outside the presence of the court and defendant. The bailiff beckoned to the request of the jury and communicated with them during their deliberation and supplied testimony which he had no right to do.

One of the great elements that distinguishes us from enemies of the democratic form of government is trial by jury. It not only must always be preserved but rigid enforcement must be exemplified in maintaining its cloak of purity. The safeguards surrounding the sanctity of the jury room must never be relaxed as to cast suspicion thereon. Its cloak of purity must at all times be kept clean. 22 O.S.1951 § 894 adds additional safeguards and prohibitions as follows:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This Court said in Ridley v. State, 5 Okl. Cr. 522, at page 526, 115 P. 628, at page 630:

"It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. * * * It will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced by the action of the jury and clerk of the court in disregarding and failing to observe the requirements of the statute. Courts cannot be too strict in compelling a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury and the purity of jury trials."

The writer is thoroughly familiar with the line of cases in this state which establish the rule that where illegal communication is had with a jury during its deliberation, it is presumed to be prejudicial to the defendant and the burden is upon the state to prove otherwise. However, your writer is of the opinion that the illegal invasion of the jury room during their deliberation is of greater importance than what was said or done as the avenue was opened for improper conduct. The defendant was placed in the position of having to rely upon the testimony of other persons as to what actually took place inside of the jury room. In this connection, I approve the language in the case of State v. Wroth, 15 Wash. 621, 47 P. 106, 107, applicable to this issue:

"It is contended by the appellant's counsel that this constituted such misconduct on the part of the trial judge as requires a reversal, and we think the contention must be sustained. In the

discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made.

"But learned counsel for the state insist that the judge said nothing to the jury, and hence his conduct could not have been prejudicial to the defendant. *But the law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurs between himself and the jury at a place where the judge has no right to be, and where litigants cannot be required to attend.* (Emphasis ours.) It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury. Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public, and in the presence of the parties or their counsel."

It was held by this court in Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773, 778, that:

"Not only do the Oklahoma cases uphold this doctrine, but the generally accepted view is that it is reversible error for the trial judge in a criminal case to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel; the basis of such ruling being that the accused shall have the right of a public trial and the right to be present during all stages thereof. There are some decisions which hold that it is necessary to show prejudicial error, but many of these cases are civil cases, and many of them are based upon peculiar statutes different from what we have in Oklahoma. The oldest and one relied upon by many authorities in establishing this principle was the case of Sargent v. Roberts, 1 Pick (Mass.) 337, 11 Am.Dec. 185. The court says:

"'And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: "He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed"; * * *.'"

The bailiff is an officer of the court and I feel assured the rule should be equally applicable and that no distinction should be made between the court or its officers. The judge's place is on the bench, and the bailiff to guard diligently the locked door to the portals of the jury room.

These rules have been strictly applied by this court to the bailiff as well as the trial judge. This court said in Grable v. State, 60 Okl.Cr. 339, 44 P.2d 152:

"Under the provisions of section 3081, O.S.1931 [22 O.S.1951 § 857], it is reversible error for the bailiff to enter a jury room and have a conversation with the jury and offer a word of prayer in the jury room in the presence

of the jurors prior to the time that the jury has returned its verdict into open court."

Lowrey v. State, 87 Okl.Cr. 313, 344, 197 P.2d 637, 652, quotes with approval from People v. Chambers, 279 Mich. 73, 271 N.W. 556, where bailiff admitted he was in the jury room four different times for the purpose of taking water in to the jurors and once to take tobacco to one of the jurors. The court said:

"It may be the acts or conduct of the officer had nothing to do with the deliberations of the jury or the conclusions which they arrived at. He had no business in the jury room. If it was necessary to furnish water to the jurors, it could have been furnished and he could have remained outside. * * *"

The court further said in reversing said case:

" 'It is not what the officer may have said or done any more than his mere presence with the jury that is or may be prejudicial to defendants and tend to cast suspicion upon the otherwise orderly administration of justice. People v. Knapp, 42 Mich. 267, 3 N.W. 927, 36 Am.Rep. 438; Churchill v. Alpena Circuit Judge, 56 Mich. 536, 23 N.W. 211.' "

This court reversed Ladd v. State, 89 Okl. Cr. 294, 207 P.2d 350, where the jury had called the bailiff and inquired of him as to whether they could leave the punishment to the court. The bailiff went to the judge's chambers and informed him of the inquiry. The judge told the bailiff to return and tell the jury "to read the instructions." This took place outside the presence of defendant or his counsel. In support of reversal, the court quotes with approval the language from Judge Brett's decision in Lowrey v. State, 87 Okl.Cr. 313, 351, 197 P.2d 637, 656:

"Moreover, we feel constrained to say that the bailiff of the court must at all times protect the jury not only from his own intrusion but also from that of outsiders. It is not necessary at any time that the bailiff pass beyond his post outside the jury room door. All papers and exhibits should be handed therefrom to him. He is at no time justified in communicating with the jury in any manner about the case except to act as a messenger between them and the court, and to inquire of them from outside the jury room, if they have arrived at a verdict."

The majority opinion in the case at bar relies upon Parker v. State, 86 Okl.Cr. 388, 193 P.2d 607, 608, which says in substance that this court will not set aside a verdict because of comments between jurors and the officers, even though improper, unless they are of such character calculated to prejudice accused. In the Parker case, one of the jurors knocked on the door and stated: "We are ready to go to lunch." The bailiff answered back: " * * * we are not ready to go to dinner yet." He did not enter the room and the conversation evidently occurred through the locked door. The defendant in his brief did not contend that the case should be reversed, but modified. The case before us is quite different in that the bailiff actually entered the jury room during their deliberation and supplied testimony concerning the case.

It was said in the Lowrey case, supra:

"We call attention to the fact that the foregoing statute (Title 22 O.S. § 857) is a prohibition against communication with the jury by outsiders or the bailiff or court officials. That does not mean by the spoken or written word only, for we will take judicial knowledge of the fact that communication may be had by facial expression, motions or signs."

There can be no doubt but what the opportunity of improper conduct was afforded the bailiff by his entering the jury room and conversing with members of the jury. This the statute surely meant to prohibit.

Your writer concedes that this court in many cases has cited the rule that where the statute is violated in regard to com-

**900**

munication with the jury that the burden is upon the state to show it was not prejudicial to defendant's right. Even if this rule were adopted in this case, it cannot be said, from close examination of the record, that the state adequately met this burden. One witness, a juror, was called by defendant to establish the fact that communication was illegally had with the jury. The state never asked whether he was prejudiced by the comments and no other witness was called on the part of the state to prove defendant's rights were not prejudiced. The burden was definitely upon the state. The defendant's only burden was to prove the illegal communications took place. He chose to stand upon its establishment. The burden of proof shifted. The state failed to accept the challenge by calling members of the jury to prove it was not prejudicial. However, in view of the clarity of the statute prohibiting such communications, and the importance attached thereto, your writer feels the best policy would be to enforce it rigidly.