## BILL RIDLEY v. STATE.

No. A-480. Opinion Filed May 9, 1911.

(115 Pac. 628.)

1.   JURY—Right to Trial By Jury. It is the duty of courts to enforce a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury, and the purity of jury trials.

2.   APPEAL—Review—Presumptions—Misconduct of Jury. While the jury were in the jury room deliberating upon their verdict, one of their number knocked upon the door, and when the door was opened a member of the jury talked with the clerk of the court about how the verdict should be signed. Held, that any communication or conversation with the jury in reference to the

case by the clerk of the court, after the jury have retired to deliberate upon their verdict, will be presumed to be prejudicial to the rights of the defendant.

3. **INTOXICATING LIQUORS—Violation of Prohibition Law—Prosecution—Sufficiency of Evidence.** The evidence in the cause examined and considered. Held, that the verdict was against the weight of the evidence.

(Syllabus by the Court.)

*Appeal from Stephens County Court; W. H. Admire, Judge.*

Bill Ridley was convicted of violating the prohibitory liquor law, and he appeals. Reversed and remanded.

On the 17th day of July, 1909, there was filed in the county court of Stephens county, Okla., an information, signed by the county attorney and sworn to by M. W. Wilson, charging the defendant, Bill Ridley, with the crime of selling, giving away, and otherwise furnishing intoxicating liquor. On the same day a warrant was issued, and said defendant was brought before the court, executed, and was released upon, an appearance bond. On October 4, 1909, the defendant filed a demurrer to the information, which demurrer was confessed by the county attorney and sustained by the court, and the state was granted leave to amend. October 6, 1909, a trial of said cause was had, resulting in a verdict of guilty, and the defendant's punishment was assessed by the jury at a fine of $100 and imprisonment in the county jail for 60 days.

After the state had rested its case, the defendant demurred to the testimony and moved to direct a verdict of acquittal, which was overruled by the court, to which action of the court the defendant duly excepted. October 12, 1909, the court overruled the motion for a new trial and pronounced judgment on the verdict of the jury, to which action of the court the defendant excepted and prayed an appeal to the Criminal Court of Appeals for the state of Oklahoma, which was granted. And on the same date said defendant filed his appeal bond in the sum of $500, which was duly approved by the court. And from the order over-

ruling the motion for a new trial, and in pronouncing judgment upon the verdict, the defendant appealed by filing in this court, on December 10, 1909, his petition in error and case-made.

*E. E. Morris,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE (after stating the facts as above): The plaintff in error has assigned a number of errors committed by the county court on his trial, only two of which will be considered in this opinion.

"First. Because the verdict and judgment are contrary to the evidence." The testimony of Spence Kincannon, the first witness for the state, was that he, with Bill Gafford, as deputy sheriffs serving a search warrant, raided the O. K. wagon yard at Duncan, and there found more than a dozen men drinking beer. That there were several bottles of beer in a tub with water and ice. The wagon yard was conducted by a man named Merritt, and he was there. They also found the defendant there drinking a bottle of beer. The other witness for the state, M. W. Wilson, was the prosecuting witness.

The material part of his testimony is as follows:

"Q. You have charged Mr. Ridley, by information, of furnishing you one pint of beer? A. I was there with the crowd; I don't know who furnished the beer. Q. Did you get any beer that day? A. Yes, sir; something similar to it. Q. Where did you get it? A. At the O. K. wagon yard. Q. How much did you get? A. I drank some out of two bottles. One man drank about half out of one bottle, and Spence Kincannon came in, and he set his down and walked out, as well as I can remember, and I picked it up and drank it. Q. Who brought it to you? A. I could not tell you who set it on the table. Q. Do you know Bill Ridley, the defendant here? A. I am not personally acquainted with him. Q. Is this the man? A. He looks a good deal larger than him. Q. Is that the man that furnished you the beer? A. He was sitting down in a chair all jambed up and looked like a smaller man— Q. I will ask you this question, 'Is that the man, or not, that furnished you the beer?' A. I could not say."

Cross-examination:

"Q. You do not undertake to say that this is the man who

furnished you the beer? A. No, sir. Q. You mean to say he resembles him a little, but this man is a heap bigger man than he was then? A. I told the judge I could not swear positive."

And further down on the page the following question and answer appears: "Q. You told Judge Admire you could not swear that it was Bill Ridley that furnished you the beer? A. Yes, sir."

Upon this testimony the state rested. The defendant moved the court to direct a verdict of acquittal, which was overruled. Whereupon the court instructed the jury and submitted the cause. The testimony taken as a whole, and the facts presented by the proof, seem to fall below that degree of certainty, as evidence of guilt of the defendant, required to support a verdict and judgment of conviction. To find a verdict of guilty, the jury were required to find that the facts presented by the proof removed reasonable doubt of the defendant's guilt, and to support such conclusion it must be founded on testimony showing facts legitimately pointing in that direction. It is not sufficient that he may have committed the act, but it must be established that he did. Direct evidence is not always available to establish a defendant's guilt, and resort is necessarily had to circumstances showing his guilt, but to be effectual they must do more than to create suspicion that the party charged is guilty. There is no evidence that the defendant owned the beer, or place where the beer was found; on the contrary, the evidenc shows that the place was controlled, if not owned, by another man. Here it seems that the prosecuting witness could not and would not say that the defendant was the person who furnished him the beer. If this doubt as to the identity of the defendant existed in the mind of the prosecuting witness, and his the only testimony offered by the state, can it be said that the jury were justified in finding from this evidence that the defendant was guilty beyond a reasonable doubt? We think not. Clearly the verdict was not supported by sufficient evidence tending to prove the offense charged.

· The eleventh assignment alleges misconduct of the jury and clerk of the county court, as set forth by affidavits in support of the motion for a new trial, which are not controverted. It appears from said affidavits that while the jury were deliberating upon their verdict some member of the jury knocked on the door of the jury room, and when it was opened a member of the jury spoke to T. B. Wilkinson, the clerk of the court, and said, "Five of us agree; do we have to sign it?" and said clerk answered, and said. "The five that had agreed had to sign it." That thereupon the door to said jury room was closed, and after a short while the jury returned into court with a verdict signed by five jurors.

Our statutes provide (section 6858, Snyder's St.) :

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, without food or drink, except bread and water, unless otherwise ordered by the court, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

And (section 6865, Snyder's St.) :

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

The question presented is whether such misconduct is sufficient to require the court to set the verdict aside and grant a new trial. It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can at-

tach to them of having acted in a manner prejudicial to the accused, or in his favor. If there was a disagreement between them, or if they were doubtful as to how they should proceed, they should have required the officer in charge to conduct them into court, and the necessary information would be given by the court in the presence of the parties. It will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced by the action of the jury and clerk of the court in disregarding and failing to observe the requirements of the statute. Courts cannot be too strict in compelling a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury and the purity of jury trials. We deem it unnecessary to consider the other assignments.

For the reason herein set forth, the judgment will be reversed, and the cause remanded to the county court of Stephens county.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.