# N. T. CUPP v. STATE.

No. A-10127.   April 21, 1943.
(136 P. 2d 700.)

Garrett & Harlan, of Mangum, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, N. T. Cupp, was charged in the district court of Greer county with the crime of assault with a dangerous weapon, alleged to have been committed upon the person of one W. M. Mikeman, was tried, convicted and sentenced to serve one year and one day in the State Penitentiary, and has appealed.

There is very little dispute as to the facts.  The defendant and W. M. Mikeman had married sisters.  At the time of the assault Mikeman was 80 years of age and in a frail condition, weighing about 140 pounds.  The

defendant was 63 years of age, strong and robust and weighed 175 pounds.

Upon the death of Mikeman's wife, a few years before the alleged assault, the defendant Cupp and his wife moved into the house with Mikeman and lived with him until March of 1940.

In February, 1940, Mikeman became ill and moved to the hospital at Mangum. After his illness was cured Mikeman continued to stay at the hospital as a boarder. In March he leased his place where Cupp lived to one Cummings for a period of ten years. Some difficulty was encountered in getting Cupp to move from the place and finally Mikeman gave Mrs. Cupp $100 and a note for $100 to get them to give possession.

After the Cupps moved, the latter part of March, Cupp and Mikeman did not meet until July 27th, the date of the alleged assault. On that date Mikeman and some other people were sitting on the steps of the courthouse during the noon hour. The defendant was in the courthouse and passed them sitting on the steps but did not speak. About an hour later Mikeman went to the men's toilet in the courthouse. While he was there Cupp entered.

Mikeman testified that Cupp asked him why he had told a lie and that he saw Cupp intended to make trouble, so he started for the door. That Cupp then made the attack on him and knocked him through the door.

The other witnesses for the state who were there at the courthouse stated they saw Cupp strike Mikeman with his fist and knock him down and then proceed to kick him two or three times while he was lying on the floor. Mikeman's left hip was fractured allegedly by a kick from the defendant. Cummings was present and

intervened, preventing defendant from kicking or striking Mikeman again.

The testimony of the defendant was that he entered the men's toilet not knowing that Mikeman was there. That he and Mikeman had some words and he called Mikeman "a big old liar." That Mikeman acted like he was going to hit him and he struck Mikeman. That several licks were exchanged. The defendant further testified:

"Q. (By Mr. Garrett, counsel for defendant) Well, what happened? A. Well, I think I hit him when he went out through that slat. Q. You think you hit him as he went out through the door? A. Yes, and that was when Cummings come in. Q. Well, do you know whether you knocked him down at that time or not? A. I don't remember. Q. Did you give him a kick or kick at him? A. I believe I kicked at him, I didn't hit him, though. Q. When was that, when did that take place? A. I believe it was when he got out that door, out of the rest room."

It is first contended that the court erred in overruling defendant's motion for continuance.

The motion for continuance is based upon the ground that the defendant did not have sufficient time within which to prepare for trial, and alleges in substance that the information was filed against defendant on November 18, 1940. That defendant was arraigned on November 27, 1940, and requested 24 hours within which to plead to the information and the court fixed December 2, 1940, as the time for defendant to plead to said information. That on December 2, 1940, the defendant entered a plea of not guilty. That prior to that time the cause had been set for trial on December 3, 1940, but that at the time the plea of not guilty was entered the case was reassigned for trial on December 5, 1940.

There are no facts set forth in the motion alleging that defendant was unable to proceed to trial because of lack of time to procure necessary witnesses in his behalf, and there are no specific facts alleged, other than those hereinabove mentioned, to constitute a showing that the defendant would be prejudiced by proceeding to trial, the sole basis for the motion being the fact that there was not actually a ten-day period elapsing between the date the plea was entered and the trial.

The record discloses that the defendant waived a preliminary examination on October 21, 1940. The transcript of the proceedings from the justice of the peace court was filed in the district court on October 28, 1940. On November 7, 1940, a docket was printed showing the assignment of cases for trial, which included the case against the defendant, although at that time no information had actually been filed against the defendant but his case had been filed in the district court criminal appearance docket. The actual presentation of evidence commenced on December 6, 1940.

In determining whether there was an abuse of discretion on the part of the trial court in overruling the motion for continuance, we have examined the complete record to determine whether defendant was materially prejudiced. Defendant used six witnesses in his behalf, and there is no showing made that he desired the testimony of any witness which he had been unable to obtain. Counsel for the defendant clearly show by their examination of defendant's witnesses and their cross-examination of the witnesses for the state that they were thoroughly familiar with all of the facts and prepared to proceed with the trial.

It is true that ordinarily a felony case should not be set for trial within less than ten days after the plea

of the defendant to the information. But it would appear from the record that the delay in allowing the defendant to enter his plea to the information was more a matter of convenience to defendant's counsel than negligence on the part of the court in ordering the arraignment of the accused. Since there actually was a 30-day period after the case was set for trial in which the accused had time to prepare his defense, and because there are no specific facts shown in the record which would justify this court in concluding that defendant had been materially prejudiced by being forced to trial, it is our conclusion that the court proceeded correctly in overruling the motion for continuance.

It is next urged that error was committed in the presentation of the state's case in chief when the prosecution asked the defendant to stand so that the doctor who was testifying to the injuries received by Mikeman could see the size of the man whom the state claimed had inflicted the wounds. The record on this proposition discloses the following:

"Q. What was the nature of the,—I want to ask you this question, Doctor, you of course were well acquainted with Mr. Mikeman? A. Yes. Q. Will you stand up, Mr. Cupp (counsel for the state asks the defendant to stand and the defendant did stand). Counsel for State: Thank you. Q. Assuming Mr. Cupp struck Mr. Mikeman with his fist, knocked him to the floor and then kicked him on or about the left hip, would that sort of assault on a man of Mr. Mikeman's size and build produce the injuries you have described?"

Defendant contends that this was requiring him to give evidence against himself. No authorities are cited to sustain his contention.

The record discloses that the physician had testified concerning the injuries suffered by Mikeman, including

348

the identification of certain X-ray pictures which the physician said disclosed a fracture of the left hip. When counsel for the state asked the defendant to stand, no objection was interposed on behalf of defendant. We cannot agree that this action was prejudicial to defendant, especially in view of the fact that defendant later took the witness stand and interposed a plea of self-defense and thereby subjected himself to cross-examination upon the differences in size between himself and the assaulted person. We can perceive of situations where such conduct of the prosecutor might constitute reversible error, but not in the instant case.

Counsel for defendant next contend that the court erred in reprimanding counsel for defendant in the presence of the jury. In connection with this assignment the record discloses the following:

"Reporter's Note: At this time a recess is had and after said recess the court again being in session, the defendant, the jury and all parties being present as hereinbefore set out, the trial of said cause proceeded as follows: Counsel for Defendant (Mr. Garrett): At this time I want to make this statement to the court. Counsel for State (Mr. Arnett): Now, we ask that if counsel is going to make a statement that he make it out of the presence of the jury. The court at this time motions counsel for the defendant and the state to the bench, but counsel for defendant remains away from the bench and repeats that he desires to make his statement, whereupon the court asked counsel not to make remarks in the presence of the jury and counsel still persisting the court orders counsel for defendant to be seated, counsel still persisted and the court again ordered counsel for defendant to be seated and instructed the bailiff to see that counsel was seated, whereupon the bailiff approached counsel for defendant and counsel for defendant again being ordered to be seated did take his seat, after which, By County Attorney: Comes now the county attorney

and attorney for the state and asks that the jury be conducted from the court room until this controversy is completed. By the Court: Gentlemen of the Jury, just before you left the courtroom Mr. Arnett made some remark to the court in regard to what the witness would testify to, —if you did hear those remarks, you are instructed that you will not consider them."

This court has several times stated that if the conduct of counsel for defendant is improper, the court must excuse the jury before administering a rebuke or threatening to fine or imprison him for contempt. Garrett v. State, 74 Okla. Cr. 78, 123 P. 2d 283, and cases therein cited.

We have repeatedly stated that absolute fairness should characterize every word and action of a judge, and if this court were doubtful as to whether this action of the trial court in this instance was prejudicial to the defendant, that doubt would be resolved in favor of the accused. But after reviewing the whole record and the circumstances surrounding the incident in question, it appears that the trial judge was very patient with counsel for defendant. No reprimand was administered to counsel. The court merely directed him to be seated, which was entirely proper, as counsel for defendant should have been willing to co-operate with the trial judge in his endeavor to prevent irrelevant matters from being called to the attention of the jury. The record discloses that there was an apparent attempt on the part of counsel for defendant to purposely create a situation wherein the court might be led into committing error. We do not feel that anything that happened in connection with this incident was prejudicial to the defendant, especially in view of the virtual admission of the defendant that he committed an unprovoked assault on this aged man. After the court asked that counsel be seated, it would probably

have magnified the incident in the eyes of the jury if the court had sent the jury from the courtroom before directing that the bailiff seat counsel.

It later developed that the matter concerning which the attorney desired to make a statement was about a witness who was present in the courtroom, and such a statement as would have been entirely proper to have been made. But there had just been a heated argument between counsel for the state and counsel for the defendant, out of the presence of the jury, concerning an alleged statement of counsel for the state. It was natural for the trial court to assume, when the attorney for defendant started to make a statement after the jury was brought back in the courtroom, that his statement was in reference to the matter which had just been under discussion. Regardless of what statement the attorney wished to make, he should have shown enough courtesy to the court to come to the bench and quietly, out of the presence of the jury, make whatever statement he wished to make. His actions were certainly extremely provocative and, under the circumstances, the court acted very calmly and wisely in disposing of the incident with the least confusion.

The brief of defendant is devoted mainly to a discussion of the proposition that the court committed error in connection with the giving of certain instructions to the jury after they had retired to deliberate upon their verdict, and alleged misconduct of the trial court in connection with the receiving of the verdict.

The record discloses the following facts in connection with this assignment of error. After the case had been submitted to the jury and it had retired to deliberate upon its verdict, the jury was returned to the courtroom by the bailiff, at which time the following occurred:

"By the Court: Gentlemen of the Jury, have you arrived at a verdict? By the Foreman: We have, Your Honor. By the Court: Mr. Foreman, will you hand your verdict to the bailiff? Whereupon the foreman delivered said verdict to the bailiff, who in turn delivered said verdict to the court, whereupon the following further proceedings were had: By the Court: Gentlemen of the Jury, the court thinks you probably haven't deliberated upon this matter a sufficient length of time to return the form of verdict you should return, if you are able to return it, therefore, the court is going to return to you the papers and ask you to deliberate upon the matter further. Reporter's Note: Whereupon the jury again retires, in charge of the bailiff, E. W. Reeves. Counsel for defendant: Now comes the defendant, N. T. Cupp, and objects to the action of this court for the following reasons, to-wit: That the jury in this case came into court and being asked by the court if they had arrived at a verdict in this case announced in open court, in the presence of the defendant and counsel, that they had arrived at a verdict, that thereupon the court instructed the foreman to hand up the verdict, together with the other exhibits, to him; that the foreman of the jury delivered the verdict to the court, that the court read the same, himself, and then without permitting anyone to know what the verdict said, instructed the jury to return to the jury room for further deliberation, for the reason that they had not deliberated long enough to return the kind of verdict they had delivered in this case; that the action of the court in so ordering the jury to return to the jury room, under said circumstances, was prejudicial to the rights of the defendant, and the defendant further objects for the reason that the verdict was not read in court, and although counsel for the defendant asked to see the verdict, the court did not allow him to do so, therefore the defendant cannot state what was done in the verdict. By the Court: After the jury retired to consider their verdict, they remained out not to exceed ten minutes, and then returned into court their verdict finding the defendant guilty of the charge contained in the information, to wit: assault

and battery, by means of a dangerous weapon, without justifiable or excusable cause, and with intent to do bodily harm, although without intent to kill, and that they could not agree upon the punishment. The court deemed that the jury had not given sufficient deliberation to the matter of assessing the punishment and therefore requested the jury to return to the jury room and further consider their verdict. The court therefore overrules the foregoing objection and motion of counsel for the defendant. Counsel for Defendant: Now, let the record further show that after the court's statement concerning the verdict and the jury's verdict, in which it was stated that they were unable to fix the punishment and the court upon the returning of said verdict, merely directed the jury to return to the jury room for the purpose of continuing deliberation, give us an exception. Thereafter, and during the deliberation of the jury, said jury sent an inquiry, in writing, to the court by the bailiff, as follows: Can a man's shoe on his foot be construed as a dangerous weapon.' Whereupon, the court ordered the jury brought into open court, and instructed the jury, which instruction was reduced to writing, and presented to the jury, and is as follows: Gentlemen of the Jury: In answer to your inquiry you are advised that you are the sole judges of all the facts and circumstances in this case, and what will constitute a dangerous weapon is for your determination from all the facts and evidence in the case, in accordance with the definition of a dangerous weapon as contained in the instruction heretofore given you. At the same time the court further instructed the jury, which instruction was reduced to writing, and delivered to the jury, as follows: Gentlemen of the Jury, you are advised that as to the verdict previously brought in, wherein you found the defendant guilty of assault with a dangerous weapon but further found that you could not agree on the punishment, the court deemed at the time that the jury had not given due consideration to the fixing of the punishment, because it is the duty of the jury to assess the punishment, if they can agree on the punishment, and the jury should not leave the assessment of the pun-

ishment to the court, until they have given the matter of the punishment due consideration, and then, after such consideration, find they cannot agree on the punishment. Gentlemen, I will submit these two instructions to you, and if there is any further information you want, the court will instruct you further."

Counsel for defendant cite and rely upon the cases of Ridley v. State, 5 Okla. Cr. 522, 115 P. 628, and Raab v. State, 62 Okla. Cr. 361, 71 P. 2d 773, to support part of their contention. Subsequent to the decision in those cases, this court has reiterated the rule that after the jury has retired to deliberate on its verdict, any communications or instructions given them by the judge should be in open court in the presence of or after notice to the county attorney and defendant or his counsel, or after they have been called. Lewis v. State, 73 Okla. Cr. 172, 119 P. 2d 91; Graham v. State, 73 Okla. Cr. 337, 121 P. 2d 308.

In all four of the above cases the trial court communicated with the jury in the absence of defendant and his counsel, and in some instances not in open court, and we hold in such cases that the presumption arises that such conduct is prejudicial to the defendant and the burden is upon the state to show that the defendant was not prejudiced thereby.

Those cases are not analogous to the facts in the instant case. The conduct of the trial judge herein shows that he followed the rule which we adopted in the above cases because when the bailiff brought him word that the jury desired to communicate with him, he had the bailiff conduct them into open court and there, in the presence of the defendant and his attorneys, gave them further instructions in writing, which are altogether proper.

It is impossible to lay down hard and fast rules which will apply to every case, as situations constantly

arise in the trial of criminal cases where the trial judge must be prepared for any contingency. We think the conduct of the trial judge in the instant case is not subject to the criticism directed by counsel. It was not on account of anything improper said or done on the part of the trial judge that the defendant was convicted, but the facts showing his guilt were so absolutely overwhelming and without serious dispute that a reasonable jury, with due regard for their oaths, could not have done otherwise than return a verdict of guilty.

There is no presumption that the bailiff had been discussing the case with the jury by reason of the fact that he brought the note from the jury to the trial judge. He was the sworn officer in charge of the jury and the only way the jury could communicate with the judge was through this sworn officer.

The record discloses that the only reason the court did not receive the verdict of guilty which was first brought into court was because the jury had declared in their verdict that they were leaving the punishment to the court, and since they had only been deliberating approximately ten minutes, the court felt, and justifiably so, that due consideration to the question of punishment had not been given by the jury, and that they should retire and deliberate further upon that question. No doubt counsel for defendant would have been greatly perturbed if the trial court had accepted a verdict from the jury finding the defendant guilty of the crime charged in the information, but leaving the punishment to the court, which was returned within ten minutes after the jury had retired to deliberate upon the verdict. It would have been better if the court had given the jury specific instructions to deliberate further on the question of punishment when they first reported. But the giving of a writ-

ten instruction on this matter when the jury reported the second time clarified any confusion which the action of the judge, in the first instance, might have created.

In a case where the issues are close some of the questions raised in this appeal might assume more importance, but where, under the defendant's own testimony, he made an unprovoked attack upon an 80-year-old invalid, this court is unable to see where any of the conduct complained about could be said to have materially prejudiced the defendant where the punishment assessed by the jury was only one year's imprisonment.

There are some other errors mentioned in the brief of the defendant which are not of sufficient importance to require a prolongation of the opinion by discussing the same, as the record does not support the assignments of error; as, for instance, the alleged improper argument of the prosecutor. We have searched the record thoroughly and have not found any place where there is any part of the argument of any of the counsel. In order to discuss this question, we would have to assume that the statements alleged to have been made by the county attorney as set forth in the brief of defendant are true. This we shall not do.

After a careful consideration of the record and the briefs, it is our conclusion that the defendant had a fair and impartial trial and that the punishment assessed by the jury was fully warranted under the facts and the law applicable to such cases, and for that reason the judgment of the district court of Greer county is accordingly affirmed.

BAREFOOT and DOYLE, JJ., concur.