Dennis Wayne FOREMAN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13096.

Court of Criminal Appeals of Oklahoma.

March 14, 1962.

Tillman & Tillman, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., R. O. Ingle, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Dennis Wayne Foreman, hereinafter referred to as the defendant, was charged by information in the District Court of Washington County with the crime of operating a motor vehicle while under the influence of intoxicating liquor after having sustained a previous conviction for the same offense. He was tried before a jury, found guilty and his punishment set at two years in the Oklahoma State Penitentiary and to pay a fine of $50.

Defendant has lodged his appeal in this court within the time prescribed by statute and asserts numerous assignments of error upon which he relies for reversal. It shall be unnecessary to discuss the evidence or elaborate upon but one of defendant's contentions of error, which, in the opinion of the court is sufficient to justify reversal.

The case had been submitted to the jury and they had retired to deliberate upon a verdict. During the course of their deliberation the foreman of the jury asked the bailiff to give them some information relative to the form of the verdict and how it should be filled out. The bailiff entered the jury room, closed the door and remained there according to his testimony from three to five minutes.

■ The defendant filed a motion for a new trial setting forth as one of the grounds that an unauthorized person entered the jury room, closed the door and remained there for several minutes. In support of this charge he produced the bailiff who admitted entering the jury room who testified as follows:

"BY MR. TILLMAN:

"Q. Will you state your name, please, sir, to the Court?

"A. E. T. Osment.

"Q. Mr. Osment, are you the Bailiff of this Court?

"A. Yes, sir.

"Q. Were you such Bailiff at the trial of the State of Oklahoma vs. D. W. Foreman?

"A. Yes, sir.

"Q. Were you in charge of the jury at that time, sir?

"A. Yes, sir.

"Q. I wish you would state to the court, please, whether or not during the deliberations of the jury that you entered the jury room.

"A. Yes, sir.

"Q. Did you converse with the jurors during the time you were in the jury room? Did they ask you any questions or did you make any statements yourself to them?

"A. The Foreman only.

"Q. All right, sir. The Foreman, Was that in the presence of the other members of the jury?

"A. Yes.

"Q. What was it the Foreman said to you and what did you say to the Foreman?

"A. The Foreman asked me if that they was supposed to make a complete decision on one of the forms whether it was guilty, or not guilty or anything—that's the form I'm talking about. And I told him that that was the Judge's instruction that they was to make it complete.

"Q. Now did you, Mr. Osment, remain in the jury room for any particular length of time?

"A. Well, just long enough for him —

"Q. About how long was that, please?

"A. Oh, it was probably I'll say three minutes, or something like that. Could have been five, but I don't think so. But we was talking about that one phase there.

"Q. During that period of time was the door to the jury room closed—

"A. Practically—practically so.

"Q. (continuing)—so that you were alone with the jurors in there?

"A. Practically so.

"Q. And did—

"A. It wasn't pushed to and locked but it was pushed to.

"Q. You were out of sight of everybody except the jury and the Foreman?

"A. Yes, that's right.

"Q. They were all present there at that time in the jury room.

"A. Yes, sir, they was.

"Q. You did not bring them back into court for the purpose of having the Court instruct them on this particular matter?

"A. No; no.

"Q. Now, was there any other discussion in the jury room with you or between you and the jurors besides what you have spoken about?

"A. There was not.

"Q. And did all the jurors pay attention to, or look or were they in hearing distance of your conversation with the Foreman?

"A. Well, I imagine they was. There was some sitting over on the north side over there. And the Foreman was over here on the south side just on the inside of the door. There's a desk there. And he was sitting there. And he and I was talking just ordinary conversation but as far as them a hearing I don't know."

Cross examination of the witness by the county attorney revealed the following:

"Q. Ed, let's clear this up as well as we can here. What did the jury ask you—what did the Foreman of the jury ask you exactly?

"A. He asked me if they should fill out the form completely or partially.

And I told him that what the Judge told them is what for them to do.

"Q. Did you tell them how to fill out the form?

"A. No, sir, I did not.

"Q. Did you make any reference—did you take the form, show them where certain things belonged?

"A. No, sir, I did not.

"Q. Did you take any of the three forms laying on the table or in any manner show him where to fill in anything?

"A. No, sir, I did not.

"Q. Did you make any other statement to the Foreman of the jury except "You are to do what the Judge told you to do", or words to that effect?

"A. I did not. That's all.

"Q. Did they indicate to you in any manner what they had decided, which way they would hold?

"A. No, sir. There wasn't a word said about it.

"Q. Did he indicate in any manner which verdict he wanted to use?

"A. No, sir, he did not.

"Q. Did you have any indication from your short conversation with him as to which way the jury had decided?

"A. No, sir.

"Q. The door was not completely closed, is that correct?

"A. Well, it was pushed to but it wasn't locked."

The bailiff was the only witness called and at the conclusion of his testimony the court said:

"Well, I think there is no question the action of the Foreman in calling the bailiff into the room was error. But I think the defendant has failed to show that he was prejudiced in any way by the action of the Foreman in doing so. I feel that although it was error for the Foreman to call the bailiff

into the room that it was harmless error and the defendant was not prejudiced by such action."

The assignment of error herein contended is based upon Title 22 O.S.A. § 857 which provides as follows:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or to communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

The testimony clearly establishes a violation of the statute above cited. The sanctity of the jury room had been invaded. The jury had received information outside the presence of the court and defendant. The bailiff beckoned to the request of the jury and communicated with them during their deliberation and supplied testimony which he had no right to do.

One of the great elements that distinguishes us from enemies of the democratic form of government is trial by jury. It not only must always be preserved but rigid enforcement must be exemplified in maintaining its cloak of purity. The safeguards surrounding the sanctity of the jury room must never be relaxed as to cast suspicion thereon. Its cloak of purity must at all times be kept clean. 22 O.S.1951 § 894 adds additional safeguards and prohibitions as follows:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This Court said in Ridley v. State, 5 Okl. Cr. 522, at page 526, 115 P. 628, at page 630:

"It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. * * * It will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced by the action of the jury and clerk of the court in disregarding and failing to observe the requirements of the statute. Courts cannot be too strict in compelling a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury and the purity of jury trials."

The writer is thoroughly familiar with the line of cases in this state which establish the rule that where illegal communication is had with a jury during its deliberation, it is presumed to be prejudicial to the defendant and the burden is upon the state to prove otherwise. However, your writer is of the opinion that the illegal invasion of the jury room during their deliberation is of greater importance than what was said or done as the avenue was opened for improper conduct. The defendant was placed in the position of having to rely upon the testimony of other persons as to what actually took place inside of the jury room. In this connection, I approve the language in the case of State v. Wroth, 15 Wash. 621, 47 P. 106, 107, applicable to this issue:

"It is contended by the appellant's counsel that this constituted such misconduct on the part of the trial judge as requires a reversal, and we think the ·

contention must be sustained. In the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made.

"But learned counsel for the state insist that the judge said nothing to the jury, and hence his conduct could not have been prejudicial to the defendant. But the law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurs between himself and the jury at a place where the judge has no right to be, and where litigants cannot be required to attend. It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury. Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public, and in the presence of the parties or their counsel."

It was held by this Court in Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773, 778, that:

"Not only do the Oklahoma cases uphold this doctrine, but the generally accepted view is that it is reversible error for the trial judge in a criminal case to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel; the basis of such ruling being that the accused shall have the right of a public trial and the right to be present during all stages thereof. There are some decisions which hold that it is necessary to show prejudicial error, but many of these cases are civil cases, and many of them are based upon peculiar statutes different from what we have in Oklahoma. The oldest and one relied upon by many authorities in establishing this principle was the case of Sargent v. Roberts, 1 Pick (Mass.) 337, 11 Am. Dec. 185. The court says:

" 'And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: "He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed;" * * *.' "

The bailiff is an officer of the court and I feel assured the rule should be equally applicable and that no distinction should be made between the court or its officers. The judge's place is on the bench, and the bailiff to guard diligently the locked door to the portals of the jury room.

These rules have been strictly applied by this court to the bailiff as well as the trial judge. This court said in Grable v. State, 60 Okl.Cr. 339, 44 P.2d 152:

"Under the provisions of section 3081, O.S.1931 (22 O.S.1951 § 857), it

is reversible error for the bailiff to enter a jury room and have a conversation with the jury and offer a word of prayer in the jury room in the presence of the jurors prior to the time that the jury has returned its verdict into open court."

Lowrey v. State, 87 Okl.Cr. 313, 344, 197 P.2d 637, 652, quotes with approval from People v. Chambers, 279 Mich. 73, 271 N.W. 556, where bailiff admitted he was in the jury room four different times for the purpose of taking water in to the jurors and once to take tobacco to one of the jurors. The court said:

"It may be the acts or conduct of the officer had nothing to do with the deliberations of the jury or the conclusions which they arrived at. He had no business in the jury room. If it was necessary to furnish water to the jurors, it could have been furnished and he could have remained outside.

* * *"

The court further said in reversing said case:

" 'It is not what the officer may have said or done any more than his mere presence with the jury that is or may be prejudicial to defendants and tend to cast suspicion upon the otherwise orderly administration of justice. People v. Knapp, 42 Mich. 267, 3 N.W. 927, 36 Am.Rep. 438; Churchill v. Alpena Circuit Judge, 56 Mich. 536, 23 N.W. 211."

This court reversed Ladd v. State, 89 Okl. Cr. 294, 207 P.2d 350, where the jury had called the bailiff and inquired of him as to whether they could leave the punishment to the court. The bailiff went to the judge's chambers and informed him of the inquiry. The judge told the bailiff to return and tell the jury "to read the instructions". This took place outside the presence of defendant or his counsel. In support of reversal the court quotes with approval the language from Judge Brett's decision in Lowrey v. State, 87 Okl.Cr 313, 351, 197 P.2d 637, 656:

"Moreover, we feel constrained to say that the bailiff of the court must at all times protect the jury not only from his own intrusion but also from that of outsiders. It is not necessary at any time that the bailiff pass beyond his post outside the jury room door. All papers and exhibits should be handed therefrom to him. He is at no time justified in communicating with the jury in any manner about the case except to act as a messenger between them and the court, and to inquire of them from outside the jury room, if they have arrived at a verdict."

It was further said in the Lowrey case, supra:

"We call attention to the fact that the foregoing statute (Title 22 O.S. § 857) is a prohibition against communication with the jury by outsiders or the bailiff or court officials. That does not mean by the spoken or written word only, for we will take judicial knowledge of the fact that communication may be had by facial expression, motions or signs."

There can be no doubt but what the opportunity of improper conduct was afforded the bailiff by his entering the jury room and conversing with the foreman of the jury. This the statute surely meant to prohibit.

Your writer concedes that this court in many cases has cited the rule that where the statute is violated in regard to communication with the jury that the burden is upon the state to show it was not prejudicial to defendant's right.

 If this rule of law was herein followed the burden of the state was never assumed. It is to be observed in the instant case that the only witness called to testify was the bailiff who clearly established the fact that he entered the jury room, pushed the door to and remained therein, conversing with the foreman from three to five minutes. The foreman nor a single member of the jury was called to testify as to what was done or said by the bailiff

**40**

while inside the jury room. Where the statute is violated as was done by the bailiff, the burden is upon the state to prove that the defendant was not prejudiced thereby. In such a case the defendant is not compelled to rely solely upon the testimony of the one who violated the sanctity of the jury room, as to what was said or done, where there is a violation of the statute (22 O.S.A. § 857) it shall be presumed, in absence of clear, distinct, and convincing proof to the contrary, that the rights of the defendant were prejudiced by the bailiff or any other unauthorized person invading the jury room while the jury was deliberating and in failing to observe the requirements of the statute against such conduct.

In view of the fact that prejudice was presumed and the state failed to assume the burden of offering proof to the contrary, the judgment and sentence of the trial court is hereby reversed and the case is remanded for a new trial.

BRETT and BUSSEY, JJ., concur.