John SCOTT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14401.

Court of Criminal Appeals of Oklahoma.

Sept. 4, 1968.

Rehearing Denied Jan. 3, 1969.

Kenneth W. Lackey, Eufaula, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

John Scott, hereinafter referred to as defendant, was convicted of the crime of Manslaughter in the First Degree in the District Court of Muskogee County, and appeals.

Since this case must be reversed and remanded, I deem it unnecessary to set forth a summary of the facts adduced on the trial and I will only deal with those assign-

ments of error which require a reversal in the instant case.

■ While Judge Bussey, in his dissenting opinion, places significance on the fact that the defendant waived his last peremptory challenges and accepted the jury, I think Justice Mosk, Supreme Court of California, in Maine v. Superior Court of Mendocino County, 68 Cal.2d 375, 66 Cal. Rptr. 724, 438 P.2d 372, 375, provided the explicit statement for this type situation, when he related in his opinion in that case:

"Defense counsel * * * is placed in an unnecessarily awkward position: unless he exhausts all his peremptory challenges he cannot claim on appeal, in the absence of a specific showing of prejudice, that the jury was not impartial. Yet, convinced that he must go to trial because his motion for a venue change was at first denied and in all likelihood will not ultimately prevail, he may fail to use every peremptory challenge sensing that the jurors he has examined may be comparatively less biased than others who might be seated were his peremptory challenges exhausted [citation omitted]. In an antagonistic atmosphere 'there will remain the problem of obtaining accurate answers on *voir dire*—is the juror consciously or subconsciously harboring prejudice against the accused resulting from widespread news coverage in the community.' [1] We can only conclude that the naked right to renew the motion for change of venue is not an adequate remedy at law to require denial of a mandamus petition."

In that case the California Court granted the writ of mandamus requiring a change of venue because of the prejudice caused by wide spread news coverage in the locality of the trial.

In this case, the defendant offered valid affidavits from ten persons, from different areas of the County, all of whom expressed the opinion in their affidavit that the de-

fendant could not receive a fair trial in Muskogee County, because of the reports and stated opinion of the news media. Three of those persons appeared and testified at the hearing in support of defendant's application for change of venue.

In contrast, the district attorney filed six counteraffidavits and at the hearing offered the testimony of two persons, each of whom expressed their belief that the defendant would receive a fair trial, notwithstanding the news media statements. Considering the totality of the circumstances surrounding defendant's request for change of venue, we are of the opinion the proof offered by the district attorney was not sufficient to overcome defendant's proof of the possibility that prejudice might have been generated from the newspaper articles.

■ I think Judge Bussey is correct in his reference to Shapard v. State, Okl.Cr., 437 P.2d 565, except that I believe where a reasonable possibility of prejudice is shown to exist the change of venue should be granted after which the trial should proceed without further delay. Shapard was granted one change of venue.

In this case personalities were of such nature which, coupled with possible preconceived opinions imposed by the press, prejudice could have been easily caused against this defendant. The record also reflects that all members of the jury had read something about the case in the newspaper. Admittedly, each stated that his opinion was not fixed, and that he could reach a decision based upon the evidence. But where a reasonable possibility of prejudice is shown to exist, concerning wide-spread pre-trial publicity, and its possible effect on the jury panel is shown to exist, then discretion seems to me to dictate the change of venue. In this case I believe such application for change of venue should have been granted.

I admit also, that many applications for change of venue are filed merely for the

---

1. Footnote 5, in Cal.S.Ct. opinion, refers to Reardon Report, at p. 127. "Fair trial v. Free Press;" and also 38 So.Cal.L.Rev. 672.

purpose of making a record, but in those instances the defendant most often does not go to the trouble to produce ten affidavits, which are then supported by witnesses who testify to such opinion, when his application comes on for hearing as was done in this case. In this respect, the United States Supreme Court stated in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; that appellate courts must make their own evaluations of the circumstances and not defer unduly to the discretion of the trial judge.

■■ I am of the opinion that the trial court erred in refusing to grant a mistrial because of an unauthorized communication between the bailiff and the jury. With reference to defendant's motion for mistrial, I readily accept the statement of Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897, but from the record in this case, it is not made entirely clear whether or not anything else was said between the bailiff and the jury, other than with reference to coffee. Such being the case, the prejudice is presumed, and as I review the record that presumption was not overcome. As this Court recited in Foreman v. State, Okl. Cr., 370 P.2d 34:

"It will be presumed, in absence of clear, distinct, concise and convincing proof to the contrary, that rights of defendant were prejudiced by violation of statute forbidding illegal communication with jurors during their deliberations."

I think the wording of Title 22 O.S.A. § 857 is quite clear, when it provides:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, *and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court,* or to ask whether they have agreed upon a verdict, and so agreed, or when ordered by the court." [Emphasis added]

■ The bailiff's statement, "One of the jurors said something about wanting coffee, but I don't think it will be long before the jury will return a verdict.", coupled with all the other conversation which took place in the jury room between the bailiff and members of the jury, as testified to at the hearing on defendant's motion for new trial, is enough to my way of thinking to cast suspicion on the verdict. Clearly, the statute was not complied with, and this Court has long claimed that such compliance must be strict.

This Court stated in Foreman v. State, Okl.Cr., 370 P.2d 34, 37,—while quoting from Ridley v. State, 5 Okl.Cr. 522, 526, 115 P. 628, 630:

"It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor."

After reviewing the record in this case, I am of the opinion the provisions of Title 22 O.S.A. § 857 were not sufficiently met, and for that reason—if none other—this case should be reversed. Consequently, I believe this case should be reversed and remanded for a new trial, with directions that defendant be granted a change of venue.

NIX, P. J., specially concurring.

BUSSEY, J., dissents.

SPECIAL CONCURRING OPINION

NIX, Presiding Judge:

In the instant case, I concur in Judge Brett's opinion but for an additional reason. The law as set forth in the Oklahoma Statutes provides as follows [Title 22, O. S.A. § 857]:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must

be sworn to keep them together in some private and convenient place, and not to permit any person to speak or to communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

The record reveals there was a direct violation of this statute. The sanctity of the jury room had been invaded. The Bailiff had responded twice to the jury's beckoning, and had, in violation of the statute, communicated with them during their deliberation.

One of the great elements of Jurisprudence that distinguished us from enemies of a democratic society, is the right to trial by jury. It not only must be preserved but rigid enforcement must be exemplified in maintaining its cloak of purity. The safeguards surrounding the sanctity of the jury room must never be relaxed as to cast suspicion thereon. Its cloak of purity must always be kept clean.

22 O.S.1951, § 894 adds additional safeguards. It provides as follows:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This writer is thoroughly familiar with the line of cases in this State which establish the rule that where illegal communication is had with a jury during its deliberation, it is presumed to be prejudicial to the defendant and the burden is upon the State to prove otherwise. However, your writer is of the opinion that the illegal invasion of the jury room during their deliberation is of greater importance than what was said or done, as the avenue was opened for improper conduct.

The defendant was placed in the position of having to rely upon the testimony of other persons as to what actually took place inside the jury room.

Learned counsel for the State insists that the defendant was not prejudiced by the Bailiff's remarks. However, the law had closed the portals to the jury room from all communication, except that provided in 22 O.S.1951, § 894, supra.

But the law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurred during unlawful contact with a jury at a place where he has no right to be, and where litigants cannot be required to attend.

It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury. Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public, and in the presence of the parties or their counsel.

It was held by this Court in Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773, 778, that:

"Not only do the Oklahoma cases uphold this doctrine, but the generally accepted view is that it is reversible error for the trial judge in a criminal case to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel; the basis of such ruling being that the accused shall have the right of a pub-

lic trial and the right to be present during all stages thereof. There are some decisions which hold that it is necessary to show prejudicial error, but many of these cases are civil cases and many of them are based upon peculiar statutes different from what we have in Oklahoma. The oldest and one relied upon by many authorities in establishing this principle was the case of Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am.Dec. 185. The Court says:

'And we are of the opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: "He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed"; * * *.' "

The bailiff is an officer of the court and I feel assured the rule should be equally applicable and that no distinction should be made between the court or its officers. The judge's place is on the bench, and the bailiff to guard diligently the locked door to the portals of the jury room.

The statute was violated, and for that reason, I feel the case should be Reversed and Remanded.

BUSSEY, Judge (dissenting):

In order to put this case in its proper perspective, I will briefly reiterate the pertinent proceedings and testimony as adduced from the record and express my views on each of the assignments of error raised.

John Scott was charged by Information with the offense of Manslaughter in the First Degree. He was tried by a jury and found guilty of the included offense of Manslaughter in the Second Degree and his punishment fixed at imprisonment in the State Penitentiary for four years. From this judgment and sentence he appeals.

The facts adduced on the trial on behalf of the State were presented by three eye witnesses, Genora Vann, Tobe Daniels and Jimmy Dee Watkins, all of whom happened to be in that vicinity in the town of Fort Gibson on August 22, 1966, at the time when the incident, out of which this prosecution arose, took place. From such testimony we can deduce that the defendant was the Town Marshal for the Town of Fort Gibson and in that capacity he was in the process of arresting Buster Vann, a man approximately 71 years of age, for the crime of being drunk in public. All three of said witnesses' testimony was substantially the same. Their testimony was that the defendant, in a loud voice, was trying to get Vann into the defendant's pick-up truck to transport him to jail, after having placed the subject under arrest. The defendant was standing behind Vann, whose hands were placed on the top of the bed of the truck in order that the defendant might search him. When Vann refused to get into the truck, the defendant struck him a blow on the head with an instrument known as a slapper. After Vann again refused to get into the truck, the defendant, while standing behind Vann, struck him two more blows on the head with the slapper, knocking the victim to the ground. The defendant lifted Vann from the ground and put him in the truck and drove away to the jail.

Floyd Garrett, another witness for the State, testified that he was president of a local bank and that he had been arrested earlier on that date by the defendant and was locked in the jail when Vann was brought in. He further testified that Vann was placed in the "run-around," which was an area surrounding an inner cell in which the witness was locked. He stated that although he had known Vann for many years and had employed him as a janitor at the bank at one time, that Vann did not recognize him on this occasion and asked

him who he was. Mr. Garrett testified that he told Vann that he was from Tulsa and that was the only conversation the two had.

Jeff Burkett testified that he operated an ambulance service in Muskogee and in that capacity he was called by the defendant on August 23, 1966, between 12:00 noon and 1:00 p. m. to come to the jail in Fort Gibson. There he found Vann, who had apparently vomited on himself and all over the surrounding area and was lying on a mattress with his eyes open wide and staring up toward the ceiling. He transported the man to the Muskogee General Hospital.

Dr. M. C. Gephardt testified that he gave emergency treatment to Vann at the hospital and that the subject at that time was unconscious and convulsing. A preliminary test showed the victim to be suffering from a stroke or a cerebral hemorrhage. Later tests determined that he was suffering from the latter. The subject never regained consciousness and expired at the hospital on August 26, 1966.

Dr. Tom S. Gafford, Jr., testified that he specialized in pathology and that he performed an autopsy on Vann on August 27th. His opinion of the cause of death after performing such autopsy was that it resulted from severe contusions of the right side of the brain with resulting areas of hemorrhage into the brain structures.

After the State rested, the defendant testified in his own behalf. His testimony was, in substance, that he did place Vann under arrest at the time and place in question, after having taken the subject home on two other occasions on that same day when the defendant determined that the subject was too drunk to be on the streets. Defendant first testified that as he was in the process of placing Vann under arrest, Vann pulled a knife, threatened to cut him and actually swung at him at least two times with the knife. Defendant further testified that he then got his slapper from the truck and had it in his hand as he disarmed Vann and placed him in the

truck, although he denied having ever struck Vann with the slapper. Next the defendant testified that, contrary to the banker Garrett's testimony, he placed both Vann and Garrett in the same cell at the jail, that there were some cross words spoken by Garrett to Vann before he left them, and that after the defendant left and locked the jail door he could hear some sort of commotion inside. He further testified that they brought Vann breakfast the next morning and he apparently was not sick at that time; however, when he came to see about lunch for the subject the defendant found him seemingly unconscious and having apparently vomited. He then called an ambulance

The only other witness of any significance that was called for the defense was Mike Isom who was riding in a car with one Paul Diebold and as they approached and passed the location where the incident in question occurred, he observed the defendant apparently trying to arrest Vann. Vann was "hollering" and the defendant was wrestling with him trying to get him to the door of the truck. This witness further testified that during his brief observation he saw no object in the defendant's hand nor did he see the defendant strike Vann. On cross-examination this witness testified that he and Paul Diebold were only at the scene long enough to stop the car while changing gears, and they then proceeded to the Dairy Cup.

As his first assignment of error, the defendant alleges that the trial court committed reversible error in failing to grant him a continuance for the reason that a material witness, one Paul Diebold, was not available to testify for the defense. I am of the opinion that this assignment of error is without merit, for from the affidavit filed by defense counsel it affirmatively appears that Mr. Diebold was a companion of the defense witness, Mike Isom, whose testimony appears above, and the missing witness' testimony would be only cumulative of that offered by Isom. Moreover, from Isom's testimony it ap-

pears that these two witnesses observed only a small portion of the altercation that took place as evidenced by his statement that they were at the scene only long enough to "change gears." We have repeatedly held that the granting or denial of a motion for continuance is addressed to the sound discretion of the trial judge and will not be disturbed on appeal except for an abuse of that discretion. In the instant case it does not appear that the trial court abused its discretion in denying the defendant's motion for continuance.

I must respectfully dissent from the views of my colleagues in their finding that the trial court erred in refusing to grant a change of venue. In Shapard v. State, Okl.Cr., 437 P.2d 565, we stated:

"Where there has been widespread adverse pretrial publicity about defendant, proper procedure in vast majority of cases is not to postpone trial indefinitely or for substantial period of time, but to proceed to trial and to determine on voir dire of panel and individual talesmen whether fair and impartial jury can be selected."

I would place great emphasis on the fact that the defendant waived his last two peremptory challenges and accepted the jury. From an examination of the affidavits, counter-affidavits, and voir dire examination of the jurors, coupled with the waiver of his last two challenges, I can only conclude that the trial court did not err in refusing to grant a change of venue.

I am also of the opinion that there is no merit to the contention that the trial court erred in refusing to grant defendant a mistrial when, after the jury retired to deliberate, there was an unauthorized communication between the bailiff and the jury. From the record it appears that after the jury retired to the jury room to deliberate their verdict, they knocked on the door at least two times and conferred with the bailiff, in the doorway, about the possibility of having some coffee brought to them. When the bailiff advised them that the coffee shop was closed and the coffee would have to be made, they advised him to hold up on their request. Later they again knocked and asked the bailiff to see about some coffee. They told him how they wanted sugar, cream, etc., and later the bailiff brought coffee to them. In Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897, we stated:

"In a capital case where misconduct of the jury is alleged, if the misconduct occurred before the case is finally submitted to the jury, the burden is on the defendant to show that the alleged misconduct was prejudicial to him. Where the alleged misconduct occurs after the case is finally submitted to the jury, prejudice is presumed, and the burden is on the state to show that no injury could have resulted therefrom to the defendant."

In applying Tapedo v. State, supra, to the instant facts, I am of the opinion that the unauthorized communication was fully explained and it affirmatively appears that the jury could in no way have been influenced by the communication with the bailiff.

I am of the further opinion that the defendant's contention that the verdict of the jury was contrary to the law and the evidence is without merit. In this regard it should be pointed out that the defendant was charged with the crime of Manslaughter in the First Degree; however, the trial court gave an instruction on the included offense of Manslaughter in the Second Degree and advised the jury that they could properly consider this included offense if they had a reasonable doubt that the defendant was guilty of Manslaughter in the First Degree. In Instruction No. 10, the trial court instructed as to just what Manslaughter in the Second Degree is, by quoting almost verbatim the language of 21 O.S.1961, § 716, which is as follows:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor

excusable homicide, is manslaughter in the second degree."

The Court next defined to the jury what is meant by "culpable negligence" by advising them as follows:

"And, in this connection, you are instructed that 'Culpable Negligence' is the omission to do something which a reasonable, prudent and honest person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case."

We have repeatedly held that the jury is the exclusive judge of the weight of the evidence and the credit to be given to the witnesses, and where there is a direct conflict in the evidence, or it is such that different inferences may be properly drawn from it, the jury's determination will not be interfered with on the ground that the evidence is insufficient to sustain the conviction, where there is competent evidence in the record from which the jury might reasonably conclude that the defendant is guilty. See Nichols v. State, Okl.Cr., 418 P.2d 77 and Payne v. State, Okl.Cr., 403 P.2d 791.

I am also of the opinion that the defendant's assignment of error that the court erred in refusing the requested instructions of the defendant is without merit. I believe that the Assistant Attorney General, Charles Owens, in his brief, has succinctly answered this proposition, and I would adopt his language in its entirety. In his brief he states:

"Rather than meet separately the several arguments relating to instructions and requested instructions which the defendant raises under his fifth proposition, the state takes the position that it can simply rely on this court's careful examination of the instructions as given. We know full well that the court will use as guidelines when it makes such examination certain fundamental principles of law which it has long since established.

First and most basic is that principle that a court has the duty to instruct the jury upon every issue presented within the ambit of the pleadings and the proof, Carter v. State, Okl.Cr., 376 P.2d 351, and in carrying out this duty the court must instruct the jury both from the standpoint of the state and of the defendant, Lester v. State, Okl.Cr., 402 [408] P.2d 563. Moreover, a defendant is entitled to have the jury instructed on the law governing the issues according to his theory of defense, providing his theory is tenable as a matter of law and finds support in the evidence, Gann v. State, Okl.Cr., 397 P.2d 686. Finally, it is not only the right but indeed the duty of counsel, where he is dissatisfied with the instructions prepared by the court or where he desires the court to give any particular instruction, to prepare and present such instruction and request that it be given. This, of course, counsel did do in the instant case. But this right and duty of counsel is modified by that further rule that if the court's instructions when considered as a whole fairly and correctly state the applicable law, it is not error to refuse requested instructions as to the law that is covered in the general instructions. Leath v. State, Okl.Cr., 398 P.2d 857; Barber v. State, Okl.Cr., 388 P.2d 320. With these broad general principles in mind, let us examine the court's instructions to see if they adequately cover the facts of this case. After giving the preliminary instructions regarding the burden of proof and presumption of innocence, the trial court instructed the jury in the following manner:

Instruction No. 5 gives the statutory definition of manslaughter in the first degree.

No. 6 sets out the punishment for same.

No. 7 advises that a peace officer may arrest, without a warrant, for a misdemeanor committed in his presence and further advises how the officer may advise or make the person aware that he is under arrest.

No. 8 defines the words 'assault' and 'battery.'

No. 9 advises the jury that if they have a reasonable doubt that the defendant is guilty of manslaughter in the first degree, then they should consider whether he is guilty of manslaughter in the second degree.

No. 10 describes what is manslaughter in the second degree, defines 'culpable negligence' and sets out the punishment for such conviction.

No. 11 describes the amount of force which a peace officer may use in attempting to arrest a person for an offense less than a felony.

No. 12 advises that a city marshal is a conservator of the peace and as such has the duty to arrest for a misdemeanor committed in his presence. This instruction further advises that such peace officer does not have authority, without a warrant, to arrest for a misdemeanor not committed in his presence and such person sought to be arrested need not submit to an arrest under these circumstances.

No. 13 advises that homicide is justifiable when necessarily committed by a peace officer in overcoming actual resistance in the discharge of his legal duty.

No. 14 gives the jury the alternative of finding the defendant guilty or not guilty, depending on whether they believed the force he used was necessary in making the arrest, if they found that it was necessary for the defendant to make the arrest.

No. 15 advises that the defendant, as town marshal, had the right to use all force necessary to overcome resistance and that the amount of force necessary was left to the sound discretion of such town marshal.

No. 16 advises that the amount of force necessary for the defendant to overcome resistance of the person sought to be arrested is not limited to self-defense.

No. 17 describes the amount of force legally available to the defendant if the jury believed that he was acting in his own self-defense.

No. 18 advises that intoxication in a public place is a misdemeanor and that the defendant had the right and the duty to arrest the decedent if he found the decedent in such condition in a public place.

No. 19 advises what weight and value should be given to the testimony of expert witnesses.

No. 20 states that the state relies in part on circumstantial evidence and defines such evidence.

Again, the state urges that an examination of the foregoing instructions in their entirety will reveal abundantly that the trial court correctly instructed on every issue presented within the ambit of the pleadings and the proof and that such instructions covered all of the theories of defense that were tenable as a matter of law. For these reasons we submit that it was not error to refuse the defendant's requested instructions."

As his last assignment of error, defendant contends that the punishment assessed by the jury is excessive. With this contention I cannot agree, for 21 O.S.1961, § 722, provides as follows:

"Every person guilty of manslaughter in the second degree is punishable by imprisonment in the penitentiary not more than four years and not less than two years, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or both fine and imprisonment."

We have repeatedly held that we will only modify a judgment in furtherance of justice. We do not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the court. See McCluskey v. State, Okl.Cr., 372 P.2d 623, and cases cited therein.

I am of the opinion that under the facts here presented, the verdict was amply sup-

ported by the evidence and the punishment imposed was not excessive and that the judgment and sentence appealed from should be affirmed.